24 F.2d 156 (1928)
In re F. MacKINNON MFG. CO.
NORTHERN BOND & MORTGAGE CO.
v.
KING.
No. 3953.
Circuit Court of Appeals, Seventh Circuit.
February 23, 1928.
C. W. Lomas, of Green Bay, Wis., for appellant.
R. B. Graves, of Wisconsin Rapids, Wis., for appellee.
Before ALSCHULER, EVANS, and PAGE, Circuit Judges.
EVAN A. EVANS, Circuit Judge.
Appellant filed its claim against the bankrupt estate of F. MacKinnon Manufacturing Company for $36,500, plus interest, and sought its allowance, and also its prior payment, out of a fund realized from the sale of a part of the bankrupt's assets upon which it asserted a first mortgage lien. The referee allowed the claim in full, but denied its preference. The District Court approved this ruling.
The essential facts are few and, save for three issues, are not involved in doubt or dispute.
Bankrupt, a Wisconsin manufacturing company, was, in 1923, in need of additional *157 capital. It sought a loan. Appellant's offer to purchase $50,000 of its 7 per cent. bonds at 93 was accepted, and the agreement of the parties was reduced to writing. This agreement called for an A rating of these bonds by the Wisconsin Railroad Commission, the body which in Wisconsin regulates the sale of securities. Interim certificates were with the consent of the commission promptly issued and sold by appellant. (Permission is granted by the Wisconsin Railroad Commission to sell securities before rating is given, where the broker is responsible and gives the required bond.) Appellant was also to be trustee in the trust deed, which was to be given to secure the bonds. This deed was executed by both parties but never recorded.
The first controverted issue is over the delivery of this trust deed.
The Wisconsin Railroad Commission refused bankrupt's application for an A rating of the bonds, and appellant promptly repurchased all outstanding bonds. An effort was then made to secure a B rating. Thereafter a new trust deed was drawn and executed. The only differences between the two deeds were in the date and in the descriptions of the property. The descriptions appearing in the second trust deed were more carefully and accurately drawn, though no additional property was included.
The Wisconsin Railroad Commission refused to give the issue a B rating. The second trust deed was recorded March 31, 1925. An adjudication in bankruptcy occurred on June 9, 1925, upon a petition filed the same day.
The second controverted issue arises over the status of the second trust deed. Was it merely a continuation of the security of the first trust deed, or was it a new security for a then past indebtedness?
In the course of the administration of the bankrupt estate, the property covered by this trust deed was sold, free and clear of liens and incumbrances. Appellant was the purchaser. The sale price was paid into court pursuant to an order of the court, a portion of which reads as follows:
"It is hereby further ordered, that said trustee do keep and retain the proceeds of said sale on deposit as a separate fund, subject to such order as shall hereafter be made with respect to priority and validity of the claims of all creditors claiming to hold liens or incumbrances against said property."
The third controverted issue, material here only in case appellant prevails, relates to the asserted priority of certain liens (taxes and a judgment) which appellee contends should be first paid out of the fund realized from the sale of the assets covered by the trust deed.
(1) The referee found that there had been no delivery of the first trust deed.
The deed was executed by bankrupt and sent to appellant for its written acceptance as trustee. Appellant executed its written acceptance and sent the deed to C., an attorney, for recordation. Either through mistake or oversight, C. failed to record it. Instead, the instrument was misplaced or lost for some months. However, a finding of delivery is not dependent upon its recordation. Bankrupt's delivery of the deed to appellant and the latter's acceptance of the trust is explainable on no theory other than an intended delivery of this security. This deed was security for bonds which had been issued, paid for, and delivered. C.'s testimony that he held the deed awaiting the action of the Wisconsin Railroad Commission cannot qualify the acts of the bankrupt, which show an intent to deliver the deed when it transferred the manual possession of the instrument to appellant.
Nor should C.'s oral testimony on this issue be accepted, against the statements appearing in his letters written at the time the deed was executed.
A few excerpts from these letters are herewith quoted:
December 3, 1923: "The trust deed that I sent you I had marked at the top `Copy of Final Draft.' As a matter of fact it was an original as far as it went but I would like to have the original recorded * * * and after the original is recorded I will return it to you."
December 11, 1923: "Will you kindly refer to my letter of the 3d and have the original typewritten trust deed signed by Mr. Taylor and Mr. Smith of the Bond Company and return it to me so that I can have the original recorded. * * * Please give this your immediate attention so I can get the matter cleared up and get at something else without giving further attention to it."
On December 13 the attorney for appellant wrote C.: "I am inclosing the trust deed signed as requested. Please have the deed recorded and filed as requested and return the recorded deed when ready."
There is no evidence from any officer or agent of bankrupt which throws doubt upon the intended delivery of the deed. The surrounding circumstances all confirm such a delivery. Bankrupt had secured the money, had given its bonds, executed and delivered its 50 notes, and had agreed in writing to *158 execute this trust deed. It is inconceivable that, having received the money, it did not intend to deliver the instrument which it presented for appellant's acceptance and left with appellant to be recorded.
In the face of this overwhelming proof, against which there is no evidence save C.'s version of an understanding of the parties, we must find there was a delivery of the first trust deed.
(2) Upon the second controverted issue we must also find for the appellant.
When the Wisconsin Railroad Commission refused an A rating to the bonds, the parties met the situation as best they could. They changed the purchase price from 93 to 92, and bankrupt undertook to secure a B rating for the bonds. To accomplish this purpose, it drew a second trust deed and thereby attempted to eliminate certain objections which the commission had made to the descriptions. No change in amount, terms, or maturity of the loan, was made. Nor was there any additional tract of land included in the descriptions. Greater accuracy only was evidenced.
The delay in executing the second deed seems unreasonable, but appellant insists that it at all times believed its first trust deed was recorded.
Appellee contends, however, that in February, 1925, bankrupt and appellant entered into an agreement which persuasively supports its contention that the second trust deed was executed and delivered pursuant to a new, a subsequent agreement of bankrupt and appellant. The agreement thus referred to was one where bankrupt agreed to an immediate sale of some collateral that had been deposited with appellant to secure the loan. Bankrupt also agreed to deposit additional security and to pay appellant $250 a month to retire the bonds as per original agreement. It was also agreed that from the proceeds of the sale of the collateral, an unsecured note of the Northern Finance Company should be first paid. The balance was to be used to retire bonds. Thirty-four thousand dollars was realized from the sale of the collateral and 10 or 11 of the bonds were retired.
We find nothing in this later agreement prejudicial to appellant's cause. Neither the sale of collateral nor the acceptance of additional security was in contravention of appellant's asserted rights under its first trust deed.
Appellee contends, finally, that the loan was made in the first instance solely on the credit of bankrupt's notes and the collateral securities deposited with appellant. This contention is disputed by the written agreement, by the act of the parties in executing the first trust deed, and, finally, by the surrounding facts and circumstances. It is inconceivable that this trust company would loan to a manufacturing company, whose financial condition was none too secure, the sum of $50,000, taking as the only security stocks and bonds of the face value of $33,000. Moreover, the agreement respecting an A rating by the Wisconsin Railroad Commission would never have been made, if the execution of the real estate mortgage were not contemplated. Still further confirmation lies in the fact that, when the commission refused an A rating, the price of the bonds was changed and bankrupt agreed to secure a B rating for its bonds.
Upon the entire record it is clear that the parties contemplated a loan which was to be secured by a mortgage upon the property described in the first trust deed; that the second trust merely took the place of the first trust deed, and was not the result of a new or different agreement.
Having disposed of the issues of fact, little difficulty is experienced in applying the law.
In Wisconsin an unrecorded mortgage takes precedence over a subsequently docketed judgment. Carver v. Lassallette, 57 Wis. 232, 15 N. W. 162; Main v. Bosworth, 77 Wis. 660, 46 N. W. 1043.
The first trust deed would have created a valid lien as against the trustee in bankruptcy even though recorded within four months of the date of filing the petition in bankruptcy. Carey v. Donohue, 240 U. S. 430, 36 S. Ct. 386, 60 L. Ed. 726.
This being so, it follows that appellant's rights were equally secured by the recording of the second trust deed, given under the circumstances disclosed, as a substitute for, and to replace, the first trust deed.
(3) This brings us to the third controverted issue. At the time of the sale there were four liens which appellee contends should be paid out of this fund before it is applied on appellant's debt. These liens were: (a) Real estate taxes levied by virtue of the laws of Wisconsin against the real estate covered by the trust deed, $3,820.20. (b) Taxes due the United States, for which notice of tax lien had been filed November 19, 1924, pursuant to the provisions of section 3186, R. S. (26 USCA § 115; Comp. St. § 5908), $4,021.29. (c) Manufacturers' excise tax due the United States, for which a notice of lien was filed *159 April 10, 1925, $2,068.01. (d) Judgment docketed December 1, 1924, $473.45.
The court ordered the property sold free and clear of taxes and from the proceeds trustee paid the taxes represented by (a), (b), and (c). Appellant admits that the tax due the state of Wisconsin (a) was a valid lien prior to its mortgage. It denies the trustee's right to pay the taxes represented by (b) and (c).
Taxes due the United States for which a notice of tax lien was filed November 19, 1925, and therefore prior to the recording of appellant's mortgage were likewise a lien upon this fund prior to appellant's lien. Section 3186, R. S. In other words, the trustee should pay the taxes represented by (b) out of the sum realized from the sale of this property.
(c) The excise tax due the United States for which notice of a lien was filed April 10, 1925, cannot be given precedence over the mortgage. This notice of lien was not filed until after the trust deed was recorded. Such lien was not ahead of the mortgage. Section 3186, R. S.
(d) Inasmuch as, in Wisconsin, the unrecorded mortgage takes precedence over a subsequently docketed judgment (Carver v. Lassallette, supra) the lien of the judgment referred to under (d) was subservient to appellant's mortgage lien.
Any payment by the trustee in defiance of the order confirming the sale which order protected the rights of all lienholders was at his own risk.
The order is reversed, with costs, with directions to enter one in accordance with the views here expressed.