UNITED STATES v. ANDERS CONTRACTING CO., Inc. et al.

No. 1364.

United States District Court
W. D. South Carolina, Greenville Division.

April 21, 1953.

On April 6, 1951, the Auto Sales Company sold a Ford truck to the Anders Company, and, contemporaneously with the sale, and as a part thereof, took a conditional sales contract, securing a note for the balance of the purchase price, which provided, among other things, as follows: The purchaser "hereby acknowledge having this date received from Greenville Auto Sales, Inc., the motor vehicle herein below described, in its present condition, together with its equipment, for which I agree to pay you on the terms and conditions set forth in the note." And, "it is agreed that the title to and ownership in said chattel are vested in you and your assigns, irrespective of any taking and delivery thereof to me until said indebtedness shall have been paid in money, at which time ownership and title shall pass to me." Further, "if any of my indebtedness shall become due and remain unpaid, or if the chattel is removed or attempted to be removed from the State, or otherwise disposed of; or if the said chattel shall be used in violation of the prohibition law, either State or Federal, then this mortgage shall become immediately due and collectible." Also, "it is further agreed, that in the event of default or breach of any of the conditions of this contract or mortgage, that the mortgagee shall be entitled to the immediate possession of said chattel, and is hereby authorized to sell the same after 5 days legal notice * * *."

On July 5, 1951, the Government filed another tax lien against the Anders Company in the amount of $1583.

On July 23, 1951, the conditional sales contract given to the Auto Company, and described above, was duly recorded.

The Anders Company defaulted in its payments and on January 21, 1952, the Auto Company made an agreement with the Deputy Collector of Internal Revenue at Greenville, South Carolina, in which it was agreed that the truck should be sold, the proceeds held in trust and the claims of all parties transferred to the proceeds, the purchaser taking clear title to the truck. The sale was held after advertisement for fifteen days, and the Auto Company was

John C. Williams, U. S. Atty., Spartanburg, S. C., W. A. Bull, Ass't U. S. Atty., Greenville, S. C., for plaintiff.

J. Wilbur Hicks, Greenville, S. C., for defendant Greenville Auto Sales Co.

WYCHE, Chief Judge.

From the agreed facts and certain documents in this case it appears that: On September 15, 1950, the Government duly filed a tax lien against the Anders Company for something over $8000 in the proper Recording Office for Greenville County, South Carolina.

the highest bidder at $250, and became the purchaser at that price.

The Anders Company made no claim to the funds. The question to be determined is: Who is entitled to the $250, the Government, by virtue of its tax liens, or the Auto Company, under the terms of its conditional sales contract?

The Government contends that it had two liens on the truck and is entitled to the proceeds by virtue of one or both of these liens, the first lien arising out of a tax claim, filed September 15, 1950, before the sale of the truck on April 6, 1951, and the second lien arising out of a tax claim, filed July 5, 1951, after the sale above mentioned; and that both liens became effective inasmuch as the conditional sales contract dated April 6, 1951, was not filed for record until July 23, 1951.

The contention of the Auto Company is that there was vested in the Anders Company only a limited property right when the truck was sold to it; that the Auto Company retained the general property, as indicated by the terms of the conditional sales contract, and the lien which was retained concurrently with the sale to the Anders Company; and that the property rights retained by the seller, and the lien created by the conditional sales contract or mortgage, are superior to both of the tax claims of the Government, irrespective of whether or not the contract was recorded.

■ The Government bases its claim on the Federal Statutes as set forth in 26 U.S.C.A. §§ 3670–3672. These sections do no define property, or rights to property mentioned in the statute, therefore, I must look to the law of South Carolina to determine the property and property rights of the parties. Karno-Smith Co. v. Maloney 3 Cir., 1940, 112 F.2d 690.

■■ Under the law of South Carolina, an instrument of the nature of the conditional sales contract given to the Auto Company by the Anders Company is classed as a chattel mortgage. Regardless of its classification, this instrument is a contract between the buyer and the seller and the parties are free to incorporate into such a contract any terms mutually agree-able and the courts are required to enforce such terms unless they contain something repugnant to the laws of the State.

■ Under the provisions of the conditional sales contract, the Auto Company retained title and conveyed only possession of the truck to the purchaser, and in case of default it had the right to regain possession without aid from the courts. The Auto Company having both title and possession was authorized under the contract, to sell the truck.

The Anders Company never obtained title to the truck. It only got possession and an equitable right to obtain title upon performance of the contract, by paying in accordance with the terms laid down in the agreement. Title was not only retained by the seller, but was protected by a contemporaneous lien expressed in the conditional sales contract, enabling the seller to extinguish any rights the purchaser had under the contract. The Anders Company never obtained any absolute property or property rights in the truck. Such rights as it acquired were qualified and limited by the terms of the retention title contract and sales agreement which were executed before any property or property rights vested in the Anders Company as purchaser.

A case which is closely analogous to the principles involved in the case at bar is Goodrich Silvertown, Inc., v. Rogers, 189 S.C. 101, 200 S.E. 91, 94, where the Easterby Motor Company on March 15, 1934, sold an automobile to the defendant Rogers and took a chattel mortgage on the car, which provided that its lien would cover all after-acquired property placed on the car, and was recorded on the same date. On May 12, 1934, the plaintiff Goodrich Silvertown, Inc. sold tires to the defendant Rogers and took a retention title contract, which was not recorded until twelve days later, May 24, 1934. The tires were placed on the car when they were bought. The Easterby Company claimed the tires under its chattel mortgage, and the Goodrich Silvertown, Inc. brought an action against Rogers and Easterby Company to determine ownership of the tires. The plaintiff Goodrich Silvertown, Inc. obtained judgment and Easterby Company appealed.

Judge G. Dewey Oxner (now Associate Justice of the Supreme Court of South Carolina) tried the case and wrote an opinion (adopted and approved by the Supreme Court of South Carolina) in which he said: "The fact that the mortgage of the defendant Motor Company contained a clause covering after acquired property is not controlling. Before the sale of the tires to Rogers, title thereto was in the plaintiff. It passed to Rogers simultaneously with the taking effect of the mortgage to the plaintiff, it being in effect a single transaction and Rogers only acquired title subject to the title retention contract, this being the true intention of the parties. He was never, therefore, able at any time, either prior or subsequent to the purchase, to pass any greater rights than he had. In this connection see the following from Judge Cothran's opinion in Carroll v. Cash Mills, 125 S.C. 332, 344, 118 S.E. 290, citing Holt v. Henley, 232 U.S. 637, 640, 34 S.Ct. 459, 58 L.Ed. 767, involving a similar point, and quoting therefrom with approval as follows (118 S.E. at page 293): 'The mortgagees have no equity and do not bring themselves within the statutory provision. We believe the better rule in a case like this, * * * is that the "mortgagees take just such an interest in the property as the mortgagor (purchaser) acquired; no more, no less." '

"Under the rule in the Cash Mills Case, a mortgage intended to cover after acquired property can only attach itself to such property in the condition in which it comes into the mortgagor's hands. In the case at bar, the tires were subject to the interest of the seller, who by virtue of its sales contract retained a specific lien thereon. See, also, in this connection, Berry, Section 1805, herein above. And, as I have pointed out, the transaction does not come within the Recordation Act as such acts are intended for the protection of subsequent, not prior creditors or purchasers."

Here the Anders Company received only a qualified property right or interest in the truck, which right or interest was subject to the terms of the contract and the Government's lien could cover only such property and property rights as the Anders Company possessed. As stated in the case of Karno-Smith Co. v. Maloney, supra [112 F.2d 692], "We think it clear that in a case of this kind the rights of the collector rise no higher than those of the taxpayer * * *."

The Government contends further that its claim to a superior lien is protected by the South Carolina Recording Act, Code 1951, § 60–51 et seq., because the first claim of the Government was recorded September 15, 1950, the truck was sold to the Anders Company April 6, 1951, and because the second claim of the Government was filed July 5, 1951, and the conditional sales contract of the Auto Sales Company was not recorded until July 23, 1951. The Federal Statute, 26 U.S.C.A. § 3670, provides that upon failure to pay any tax the amount shall become a lien in favor of the United States. This would have created a general lien against all property and property rights of the taxpayer. Congress did not leave the matter thus, but by Section 3672, provided: "Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector—" in accordance with State Recording Acts where the States provide for the tax claim to be filed under those Acts. South Carolina's statute provides that Federal tax claims might be recorded as therein provided. Code of Laws of South Carolina 1952, § 65–2721 et seq. A Federal tax claim does not become a lien until it is filed in accordance with the South Carolina Recording Act, and the effect of the lien is then calculated and determined under and by that Act which is contained in § 60–101, Code of Laws of South Carolina 1952, the pertinent provisions of which are as follows: "* * * all mortgages or instruments in writing in the nature of a mortgage of any property, real or personal, * * * shall be valid so as to affect the rights of subsequent creditors (whether lien creditors or simple contract creditors) or purchasers for valuable consideration without notice only from the day and hour when they are recorded * * *."

In order to determine the effect of the Recording Act it is necessary to keep

in mind the rules of the common law so as to determine what change the Recording Act made in such rules. Under the common law, deeds, mortgages, etc., did not have to be recorded, yet they were good, not only between the parties, but as against the world. This led to harsh situations and inflicted many injustices. In order to ameliorate the common law rule, the courts of equity developed the doctrine of "purchasers for value without notice". The common law rule was changed to some extent by the South Carolina Recording Acts. The change was expressed by Judge Oxner in the Goodrich case, as follows: "A study of the development of the Recordation Acts (Sec. 8875 of the Code) shows that they were an outgrowth of efforts to protect 'subsequent purchasers and creditors' from 'secret liens'. These are the true key words to any proper study and application of the principles. Such study shows (and it is undisputed) that at the common law, a mortgage, deed or other instrument, although not recorded, was good not only between the parties but against the world. This led to difficult situations and to hardships when thereafter innocent purchasers and mortgagees were involved. In other words, the evil of such secret transfers and secret liens became evident, and resulted in the equitable doctrine of 'subsequent purchaser for value without notice' as well as the development of the Recording Acts."

Under the South Carolina law, the common law rule that a chattel mortgage or a mortgage over real estate is good against the world, though unrecorded, remains in effect except as changed by the Recording Act. In this case the rights reserved in the conditional sales contract of the Auto Company are good against the world, unless such rights are limited by the Recording Act. As said in the Goodrich case, supra: "Therefore, the important point is that the common-law doctrine as to the validity of a paper such as that of the plaintiff is applicable here except insofar as it is limited if at all by the terms of the Recording Act. By its terms, however, the Act (Sec. 8875) merely places a limitation upon such validity in so far as it affects the rights of *subsequent purchasers or creditors without notice,* and in the case at bar, the defendant Motor Company cannot claim the benefit of the limitation in that it is a prior creditor. Nor can the defendant qualify as a subsequent purchaser without notice because when it repossessed the automobile, the title retention contract of the plaintiff was on record." (Emphasis added.)

The Recording Act provides that mortgages shall be valid so as to protect the rights of subsequent lien creditors, subsequent simple contract creditors or purchasers for valuable consideration without notice, only after being recorded. Liability for the Government arises out of the statute and not out of contract. At common law the chattel mortgage held by the Auto Company did not have to be recorded to be effective against the claim of the Government and there is nothing in the Recording Act which changes this rule under the facts in this case.

The position of the Government is not sustained by the rules of common law or those prescribed by the Recording Act of South Carolina, neither is it sustained by any equitable principle. The Government has suffered no loss by reason of the failure to record the chattel mortgage, and to hold that the Government could take the property, which had been sold to the taxpayer, even though title had been retained by the seller, would result in an unjust enrichment of the Government at the expense of the Auto Company.

For the foregoing reasons I conclude that neither of the claims of the Government is superior to the claim of the Greenville Auto Sales Company, and that the Greenville Auto Sales Company is entitled to the Two Hundred, Fifty ($250) Dollars, in question, free of the trust involved, and of all claims made by the Government herein, and

It is so ordered.