**MASON CITY AND CLEAR LAKE RAILROAD COMPANY, a corporation, Plaintiff,**

**v.**

**IMPERIAL SEED COMPANY, a corporation; Donald L. Goranson, Receiver of the Property of Imperial Seed Company; Frank M. Halpin, District Director of Internal Revenue; Iowa Employment Security Commission; and The United States of America, Defendants.**

**Civ. No. 677.**

United States District Court
N. D. Iowa, Central Division.

June 10, 1957.

C. Frederick Beck, of Smith & Beck, Mason City, Iowa, for plaintiff.

F. E. Van Alstine, U. S. Dist. Atty., Theodore G. Gilinsky, Asst. U. S. Dist. Atty., Sioux City, Iowa, for defendant United States.

Edward R. Boyle, of Boyle & Schuler, Clear Lake, Iowa, for Donald L. Goranson, receiver of the property of Imperial Seed Co.

GRAVEN, District Judge.

The plaintiff Mason City and Clear Lake Railroad Company is an Iowa corporation operating an interurban electric railway in Cerro Gordo County, Iowa. It is the owner of a certain tract of land in that county which is approximately 600 feet in length and varying from around 500 feet to 300 feet in width. On September 12, 1949, the plaintiff and the Imperial Seed Company entered into a written lease as to that tract. Under

that lease the premises were leased to the Imperial Seed Company for a term of ten years commencing as of September 1, 1949, at a rental of $175 per month. At the time the lease was entered into the Imperial Seed Company was in possession of the premises as the assignee of a lease between the plaintiff and one Robert Hayden. It had erected thereon a building designated as Building "B." That building also contained certain machinery and equipment which was owned by it. The building was a steel quonset type building 40 feet by 100 feet with a concrete floor. At the time the lease was entered into there was also situated on the premises a building designated as Building "A" which was owned by the plaintiff. The Imperial Seed Company is herein also referred to as the defendant Imperial Seed Company.

The defendant Imperial Seed Company paid the rent due under the lease up to April 1, 1954. It defaulted in the payment of the rent subsequently due. On July 19, 1955, there was due and owing the plaintiff as rent from that defendant the sum of $2,730. Sometime prior to July 19, 1955, one Lang commenced an action against the Imperial Seed Company in the District Court of Iowa in and for Cerro Gordo County. On July 19, 1955, an order was entered in that action finding that the defendant Imperial Seed Company was insolvent and appointing the defendant Donald L. Goranson as permanent receiver of all the assets and property of the company.

The lease contains the following provision:

"The Lessee has constructed the building designated as Bldg. B on the annexed Plat at its own cost and expense with the consent and permission of Lessor and said building is and shall be considered for all purposes as personal property of the Lessee and may be removed from the premises at the termination of this lease, subject only to lien rights of the Lessor created by law or by this agreement. * * *"

Section 570.1, Code of Iowa, 1954, I.C.A., provides as follows:

"A landlord shall have a lien for his rent upon all crops grown upon the leased premises, and upon any other personal property of the tenant which has been used or kept thereon during the term and which is not exempt from execution."

Section 570.2, Code of Iowa, 1954, I.C.A., provides, in part:

"Such lien shall continue for the period of one year after a year's rent, or the rent of a shorter period, falls due."

The lien created by that Section is generally known and referred to as a landlord's statutory lien.

Paragraph 13 of the lease provides, in part, as follows:

"The Lessee covenants and agrees to pay promptly as the same become due all rent moneys and other sums which may from time to time be due from Lessee to Lessor under the terms hereof, and to strictly and literally keep and perform all the covenants, conditions and agreements herein contained made and to be kept and performed by said Lessee. It is further understood and agreed between the parties hereto that the Lessor shall have and is hereby given a first and valid lien on the building designated as Bldg. B on the annexed Plat and on all furniture and fixtures and all other personal property of the Lessee kept or used on the premises to secure the Lessor in the faithful performance by the Lessee of this covenant."

The lien given by that paragraph is what is generally known and referred to as a landlord's contract lien or landlord's chattel mortgage lien. A clause in a lease providing for such a lien is generally known and referred to as a chattel mortgage clause. In the present case the plaintiff's lease containing the chattel mortgage clause was not recorded.

Starting in 1954 the defendant Imperial Seed Company became delinquent

in paying the amounts withheld for federal income taxes and employment taxes. It also became delinquent in the payment of federal unemployment taxes and its income taxes. The tax situation of the defendant is as follows:

| Kind of Tax | Period Ending | Acc't No. | Amount Assessed | Assessment Made | Lien Filed | Balance 3/19/57 |
|---|---|---|---|---|---|---|
| W. & E. | 3/31/54 | 5-13-5711 | $10,238.25 | 5/14/54 | 8/10/54* | $ 1,047.83 |
| | | | I  23.55 | | | |
| " | 6/30/54 | 8-26-6943 | 5,900.25 | 8/27/54 | 1/ 5/55 | 3,900.25 |
| " | 6/30/54 | 9-23-5633 | I  16.73 | 9/24/54 | 1/ 5/55 | 16.73 |
| " | 9/30/54 | 11-15-5481 | 4,773.36 | 11/15/54 | 1/ 5/55 | 4,773.36 |
| " | 12/31/54 | 3-23-5152 | 3,237.32 | 3/23/55 | 6/23/55 | |
| | | | P  323.73 | | | 3,561.05 |
| " | 3/31/55 | 5-13-5347 | 2,127.66 | 5/13/55 | 7/20/55 | 2,127.66 |
| " | 3/31/55 | 8-15-290080 | P  35.46 | 8/15/55 | | 35.46 |
| " | 6/30/55 | 10-31-5274 | 899.04 | 10/31/55 | | |
| | | | P  134.86 | | | 1,033.90 |
| FUT | 1954 | 6-15-300007 | 506.75 | 6/15/55 | 8/18/55 | |
| | | | P  126.69 | | | 633.44 |
| " | 1954 | 11- 8-307011 | 624.40 | 11/ 8/56 | | |
| | | | P  156.10 | | | |
| | | | I  66.34 | | | 846.84 |
| " | 1955 | 10-31-300006 | 72.97 | 10/31/55 | | 72.97 |
| Corp. | 6/30/50 | 8-31-521724 | 16,336.86 | 8/31/55 | 9/ 3/55 | |
| | RAR | | I 4,433.78 | | | 20,770.64 |
| | | | | | | $38,820.13 |

*Lien filed for $9,561.80 but assessment as shown above

That defendant also became delinquent in the payment of state unemployment taxes. The Iowa Employment Security Commission filed liens for such taxes.

On August 5, 1955, the plaintiff commenced the present action in the District Court of Iowa in and for Cerro Gordo County. It made parties defendant to the action the Imperial Seed Company, Donald L. Goranson, Receiver of the Imperial Seed Company, Frank M. Halpin, District Director of Internal Revenue, and the Iowa Employment Security Commission. The plaintiff sought the enforcement of its statutory landlord's lien against Building "B" and the machinery and equipment contained therein. It also sought the foreclosure of the contract lien provided for in the so-called chattel mortgage clause of the lease against the same property. It also sought to have its lien on that property established as prior and superior to any liens or claims of any of the defendants. The United States of America was substituted as a party defendant in place of Frank M. Halpin, District Director of Internal Revenue. The defendant United States of America removed the case to this Court.

On or about August 22, 1955, the defendant Donald L. Goranson as Receiver, pursuant to the order of the District Court of Iowa, sold the machinery and equipment contained in Building "B" at public auction free of liens and received therefor in excess of $2,200 net after the payment of costs incident to the sale. The order provided that all liens on that machinery and equipment so sold were transferred to the net proceeds of the sale. On or about December 21, 1956, the defendant Donald L. Goranson as Receiver, pursuant to Court order of the District Court of Iowa in and for Cerro Gordo County, sold

Building "B" free of liens and realized therefor in excess of $2,500 net after the payment of the costs incident to the sale. The order provided that all liens against the building were transferred to the net proceeds of the sale. Donald L. Goranson, as Receiver, now holds the net proceeds of the sale of the building and the machinery and equipment contained therein subject to the determination of this Court as to priority of liens. The controversy in this case is as to whether the claim of the defendant United States for taxes has priority as to the proceeds of the sale of the building and the machinery therein contained over the claim of the plaintiff for rent. The rights of those two parties in such proceeds are the same as they were to the property before the sale by the Receiver.

Section 556.3, Code of Iowa 1954, I.C.A., provides as follows:

"No sale or mortgage of personal property where the vendor or mortgagor retains actual possession thereof, is valid against existing creditors or subsequent purchasers without notice, unless a written instrument conveying the same is executed, acknowledged like conveyances of real estate, and such instrument or a true copy thereof is duly recorded by, or filed and deposited with, the recorder of the county where the mortgagor or vendor resides if he be a resident of this state at the time of the execution of the instrument; but if he be not such a resident then of the county where the property is situated at that time."

The Iowa Employment Security Commission did not appear and no proof was offered as to the status of its lien. The only question for determination is the question of priority as between the plaintiff and the defendant United States of America.

Section 191, Title 31, U.S.C.A. (R.S. Sec. 3466) provides as follows:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

Section 6321, Title 26, U.S.C.A. provides as follows:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

This statute was first enacted in 1866. 14 Stat. 107 (1866). It formerly appeared in the Internal Revenue Code as Section 3670. It is Section 6321 of the Internal Revenue Code of 1954.

Section 6322, Title 26, U.S.C.A. provides as follows:

"Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time."

In 1879 Congress enacted 20 Stat. 331 (1879). Under that enactment it was provided that the effective date for the priority of the Government's tax lien was the date the Collector of Internal Revenue received from the Commissioner of Internal Revenue an assessment list carrying the unpaid tax liability of the

delinquent taxpayer. In enacting the Internal Revenue Code of 1954 Congress changed the effective date for the Government tax lien priority to the date the assessment is made. It has been pointed out that this change increases the hazard of secret liens as to parties not within the protection of Section 6323. Harold L. Reeve, "The Relative Priority of Government and Private Liens," 29 Rocky Mountain Law Review 167, 177 (February 1957). Section 6322 above set out formerly appeared in the Internal Revenue Code as Section 3671. It is Section 6322 in the Internal Revenue Code of 1954. The Internal Revenue Code of 1954 was approved on August 16, 1954, during the period involved in the present case. However, the change in the effective date of the Government tax lien priority is not of significance in the present case.

Section 6323, Title 26, U.S.C.A. provides, in part, as follows:

"(a) Invalidity of lien without notice.—Except as otherwise provided in subsection (c), the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate—

"(1) Under state or territorial laws.—In the office designated by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law designated an office within the State or Territory for the filing of such notice * * *"

The Section in its original form was enacted by Congress in 1913. 37 Stat. 1016 (1913). It was intended to afford protection to those named in it against what in many cases amounted to a secret lien in favor of the Government. It formerly appeared as Section 3672 of the Internal Revenue Code. It appears in the form above set out as Section 6323 of the Internal Revenue Code. The statute as originally enacted has been amended several times. The amendments are not of significance in the present case.

Section 335.11, Code of Iowa 1954, I.C.A., provides as follows:

"The notice of a lien for any tax in favor of the government of the United States, or any release of such lien, may be filed and recorded in the office of the county recorder in any county within which the property subject to the lien is situated. Such county recorder shall file, record, and index any such notice of lien or any release of the same without fee."

It does not appear that the liens asserted by the defendant United States of America were ever filed in the office of the County Recorder of Cerro Gordo County, Iowa, under the provisions of Section 335.11.

The defendant United States of America claims priority both under Section 191 of Title 31 and under Section 6321 of Title 26.

There is no claim or proof that the defendant United States of America had any actual notice of the chattel mortgage clause in the plaintiff's lease prior to the time the plaintiff commenced this action on August 5, 1955. There is no claim or proof that the plaintiff had any actual notice of any of the claims or liens of the defendant United States of America until shortly before it commenced this action on August 5, 1955.

The plaintiff claims the sum of $1,855 of the proceeds by virtue of its statutory landlord's lien. It claims the sum of $2,730 under the so-called chattel mortgage clause of its lease. The sum of $1,855 claimed under its statutory landlord's lien is included in the sum of $2,730 claimed under the chattel mortgage clause of its lease. The difference is occasioned by the fact that under Section 570.2, Code of Iowa 1954, I.C.A., heretofore referred to, the statutory lien did not continue for the entire period for which the rent was unpaid. Under the Iowa law a landlord may enforce his statutory lien and con-

tract lien in the same action. Mau v. Rice Brothers, 1933, 216 Iowa 864, 249 N.W. 206. That was the procedure adopted by the plaintiff in the present case. The right to the statutory landlord's lien is not dependent upon a written lease. The lien arises out of the status of landlord and tenant. Where a landlord has a written lease providing for a contract or chattel mortgage lien in addition to his statutory lien, and his statutory lien covers the same period and the same property as his contract lien, the recording or non-recording of the lease is usually not of importance. Where, however, a landlord seeks to assert his contract lien against property not subject to the statutory lien as, for instance, exempt property, the question of recording or non-recording of the lease is of importance so far as subsequent purchasers or existing creditors are concerned. The recording or non-recording of the lease is also of importance where a landlord seeks to assert his contract lien against subsequent purchasers and existing creditors for rent for a period not covered by his statutory lien. In order for a landlord's contract lien to be valid against subsequent purchasers and existing creditors, it must be recorded as a chattel mortgage in accord with the provisions of Section 556.3, Code of Iowa 1954, I.C.A., relating to the recording of chattel mortgages. Sioux Valley State Bank v. Honnold, 1892, 85 Iowa 352, 52 N.W. 244, 245.

A contract lien such as the plaintiff's is classified as a chattel mortgage under the Iowa Law. Evans v. Stewart, 1954, 245 Iowa 1268, 66 N.W. 2d 442. However, a state's characterization of a lien is not binding on the federal courts in cases involving conflicting claims of the United States. United States v. Acri, 1955, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264; United States v. Gilbert Associates, 1953, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071; United States v. Security Trust & Savings Bank, 1952, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53; United States v. Waddill, Holland & Flinn Co., 1945, 323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294. While the United States Supreme Court is not bound to follow the general well-established rules of law as to what constitutes a chattel mortgage, yet until it speaks more clearly on the matter than it has so far it would appear that one should assume it would probably follow those rules. The reference to a lien as a contract lien would not seem to be of significance. All real estate mortgages and chattel mortgages are created by contract and constitute contract liens. A contract lien such as the plaintiff's is characterized as a chattel mortgage under well-established rules of law. 14 C.J.S. Chattel Mortgages § 8. See also note 21 Iowa Law Review 109 (1935); United States v. Gargill, 1 Cir., 1955, 218 F.2d 556, 559; United States v. Anders Contracting Co., D.C.W.D.S.C.1953, 111 F.Supp. 700, 702. The provision in the plaintiff's lease in question created the relationship of chattel mortgagee and chattel mortgagor between it and the defendant Imperial Seed Company. As between the plaintiff and the defendant Imperial Seed Company, the provision in question created a valid chattel mortgage lien. The fact that a chattel mortgage creates a valid chattel mortgage lien between the parties to it is not determinative of its status as a valid lien with respect to third parties nor as to its priority in the case of conflicting claims to the property involved. Under the Iowa law, in order for a chattel mortgage lien to be valid against subsequent purchasers and existing creditors the mortgage must contain a sufficient description of the property purported to be covered by the mortgage. The description in a chattel mortgage is sufficient if it will enable third persons aided by the inquiries which the instrument suggests to identify the property. Iowa Savings Bank v. Graham, 1921, 192 Iowa 96, 181 N.W. 771, 772. See also United States v. Fleming, D.C.N.D.Iowa 1946, 69 F.Supp. 252. The description in a chattel mortgage is sufficient if it directs the mind to facts or evidence from which one may ascertain or identify the mortgaged property with absolute certainty.

Liscomb State Sav. Bank v. Akers, 1924, 197 Iowa 706, 197 N.W. 890. In the present case the description is unusually specific. It describes a specified building and the machinery and equipment contained therein. The property described was non-fluctuating in character. Under the Iowa law in order for a chattel mortgage lien to be valid against subsequent purchasers and existing creditors without actual notice, it must under Section 556.3, Code of Iowa 1954, I.C.A., be recorded in the office of the County Recorder. That was not done by the plaintiff in this case. The plaintiff did not take the property in question into possession or so far as the record shows ever attach the property.

In this case the plaintiff held a statutory landlord's lien against the building and the machinery and equipment contained therein. It also held an unrecorded chattel mortgage executed September 12, 1949, against the same property. The defendant United States of America first had actual notice of the plaintiff's liens on August 5, 1955, when this action was brought. At that time the Government had already acquired tax liens against the building and the machinery and equipment contained therein totalling approximately $16,000. As heretofore noted, the total claim of the Government is in the sum of $38,820.13. The balance of approximately $22,000 was the subject of tax liens filed after August 5, 1955. The Government asserts its claim to the proceeds in question under the priority statute (Section 191) and under the tax lien statute (Section 6321) and as an existing creditor without notice as to $16,000 of its lien claims under Section 556.3 Code of Iowa 1954, I.C.A. Since the proceeds in question are much less than $16,000, the status of the balance of the claim of the Government is not of significance.

There are excellent discussions on the priority of claims of the United States in two fairly recent law review articles and in one very recent law review article. An article by Professor Frank Kennedy of the College of Law of the State University of Iowa entitled "The Relative Priority of the Federal Government: The Pernicious Career of the Inchoate and General Lien", 63 Yale Law Journal 905 (May 1954); an article by Paul E. Anderson of the California Bar entitled "Federal Tax Liens—Their Nature and Priority", 41 California Law Review 241 (Summer 1953); an article by Harold L. Reeve of the Chicago Bar entitled "The Relative Priority of Government and Private Liens", 29 Rocky Mountain Law Review 167 (February 1957).

■ It is clear that the claim of the plaintiff based on its statutory landlord's lien is inferior to that of the Government under the priority statute. United States v. Waddill, Holland & Flinn Co., 1943, 323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294. It is also clear that the claim of the plaintiff is inferior to the claim of the Government under the tax lien statute. United States v. Scovil, 1955, 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271. See also United States v. White Bear Brewing Co., 1956, 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871.

In contests for supremacy between federal tax claims and statutory liens the latter have fared badly in the United States Supreme Court in recent years. How badly they have fared is strikingly pointed out in the article by Harold L. Reeve, supra. In that article (p. 168) he states that during the last ten years twelve cases involving the question of such supremacy have come before the United States Supreme Court. That author further states, p. 169:

"The Government has won all twelve cases, a remarkable record. The cases involve a number of different aspects of the problem of establishing the supremacy of the federal lien for unpaid taxes over a number of kinds of liens with which the federal statutes do not specifically deal. In these cases, the United States has prevailed in contests for priority as against attachment, garnishment, landlord's liens, mechan-

ic's liens, municipal real estate tax liens, and city water rent liens."

The author on page 170 sets out the following schedule of cases:

"Schedule of Cases

| Case | Property Involved | Type of Nonfederal Lien | Applicable Federal Statute | Priority Awarded to |
|---|---|---|---|---|
| United States v. White Bear Brewing Co., 1956, 350 U. S. 1010, 76 S. Ct. 646, reversing, 7 Cir., 227 F.2d 359; rehearing denied, 1956, 351 U. S. 958, 76 S. Ct. 845. | Real estate | Mechanic's Lien | § 3670 | United States |
| United States v. Colotta, 350 U.S. 808, 76 S.Ct. 82, reversing, Miss. 1955, 79 So. 2d 474. | Real estate | Mechanic's Lien | § 3670 | United States |
| United States v. Acri, 1955, 348 U.S. 211, 75 S.Ct. 239. | Cash and bonds in safety deposit box | Attachment | § 3670 | United States |
| United States v. Liverpool & London Ins. Co., 1955, 348 U.S. 215, 75 S.Ct. 247. | Payment due as fire loss by insurance company | Garnishment | § 3670 | United States |
| United States v. Scovil, 1955, 348 U.S. 218 75 S.Ct. 244. | Sale proceeds of tenant's property | Landlord's lien | § 3670 | United States |
| United States v. City of New Britain, 1954, 347 U.S. 81, 74 S.Ct. 367. | Proceeds of real estate mortgage foreclosure sale | Municipal water rents and real estate taxes | § 3670 | On Government appeal, case reversed and remanded to trial court for further proceedings |

| Case | Property Involved | Type of Nonfederal Lien | Applicable Federal Statute | Priority Awarded to |
|------|-------------------|-------------------------|----------------------------|---------------------|
| United States v. Gilbert Associates, 1953, 345 U.S. 361, 73 S.Ct. 701. | Proceeds of receiver's sale of machinery | Municipal *ad valorem* tax | § 3466 | United States |
| United States v. Security Trust & Savings Bank, 1950, 340 U.S. 47, 71 S.Ct. 111. | Proceeds from sales of real estate | Attachment | § 3670 | United States |
| Goggin v. Division of Labor Law Enforcement of California, 1949, 336 U.S. 118, 69 S.Ct. 469. | Proceeds from bankruptcy trustee's sale of personal property | *Wage claim | § 64 and § 67, sub. (c), of Bankruptcy Act, 11 U.S.C.A. §§ 104, 107, sub. c | United States |
| Commonwealth of Massachusetts v. United States, 1948, 333 U.S. 611, 68 S.Ct. 747. | Proceeds from assignee's sale | *State unemployment tax | § 3466 | United States |
| People of State of Illinois ex rel. Gordon v. Campbell, 1946, 329 U.S. 362, 67 S.Ct. 340. | Proceeds from receiver's sale | State unemployment tax | § 3466 | United States |
| United States v. Waddill, Holland & Fleming Inc., 1945, 323 U.S. 353, 65 S.Ct. 304. | Proceeds from trustee's sale | Landlord's lien and municipal tax | § 3466 | United States |

*Competing federal claims based on alleged priority of payment rather than priority of lien."

Section 3466 referred to in the schedule is the same Section referred to herein as Section 191. Section 3670 referred to in the schedule is the same Section referred to herein as Section 6321. It is noted that all of the liens involved in those cases were non-contractual or statutory liens and they did not involve contractual liens coming within the provisions of Section 6323.

The claim of the plaintiff based upon its contract lien gives rise to several questions. In the case of Evans v. Stewart, 1954, 245 Iowa 1268, 66 N.W.2d 442, the Iowa Supreme Court held that a landlord's contract lien similar to the contract lien of the plaintiff had priority over the claim of the Government based on both the priority statute (Section 191) and the federal tax lien statutes (Sections 6321, 6322, and 6323). The Government did not file a petition for a writ of certiorari to the United States Supreme Court so it is not known whether that holding of the Iowa Supreme Court is in accord with the thinking of the United States Supreme Court. It would seem that this Court does not necessarily have to assume that the lien involved in that case prevailed only because the United States Supreme Court did not get its hands on it. There is a difference between the situation in this case and the situation in the case of Evans v. Stewart, supra. In that case the plaintiff's lease was properly and promptly recorded in the office of the County Recorder several years before the claims of the Government arose. The Iowa Supreme Court in its opinion seems to have placed importance on that fact. In this case the plaintiff's lease was never recorded. Before considering that phase, reference will be made to certain broader phases.

In Section 6323, Congress attempted to give a measure of protection to mortgagees, pledgees, purchasers and judgment creditors against Government tax liens. The protection afforded by that Section has been somewhat eroded by judicial construction. In contests between the Government and those holding liens not within the scope of Section 6323, the United States Supreme Court has greatly broadened the scope of Section 191, the priority statute. The twelve cases heretofore listed indicate that in such contests the Government prevailed whether it based its claim on the priority statute or on Section 6321, the tax lien statute. In the present case, so far as the plaintiff's statutory landlord's lien is concerned, the Government, as heretofore noted, relies for priority upon both the priority statute and the tax lien statute. The cases referred to show that it is entitled to prevail under either statute.

The twelve cases referred to all dealt with statutory liens not within the provisions of Section 6323. Government priority was largely attained by means of the "specific and perfected" rule. Intimations have been made and the fear has been expressed that the United States Supreme Court might apply the "specific and perfected" rule now being applied to statutory liens to consensual or contractual liens such as mortgages. The result of such an application of that rule could be that Government claims for taxes which were not in existence at the time of the taking of a valid mortgage would have priority over it. See Kennedy, supra, footnote 141, page 930. The United States Supreme Court has not as yet so held. However, it is noted that in a comment appearing in 39 Iowa Law Review 189, 194 (1953), the writer, after referring to the standards of specificity and perfectedness set up by the United States Supreme Court in the case of People of State of Illinois ex rel. Gordon v. Campbell, 1946, 329 U.S. 362, 67 S.Ct. 340, 91 L.Ed. 348, makes this observation:

"Although the suggestion may occasion surprise, it does not appear that a mortgage prior to foreclosure can meet the standards prescribed in [People of State of] Illinois ex rel. Gordon v. Campbell, even though recorded."

In the case of Bank of Wrangell v. Alaska Asiatic Lumber Mills, Inc., D.C.Alaska 1949, 84 F.Supp. 1, the Court had before

it among other matters the question of the priority of the Government claim for taxes under Section 3466 (the priority statute) over an unforeclosed real estate mortgage held by a bank. The Court stated, 84 F.Supp. on page 2: "Incredible as it may seem, the question whether a mortgage lien is entitled to priority over the United States under this statute has not yet been decided by the Supreme Court." The Court with some dubiousness granted priority to the bank on its real estate mortgage. To hold that Government claims for taxes could attain priority under the "specific and perfected rule" over a valid real estate mortgage even though the tax debt arose subsequent in time to the creation of the mortgage would seem to have catastrophic consequences for fiduciaries, banks, pension funds and other investors investing funds in first mortgage loans.

Although a party is prima facie one of the parties named in Section 6323, he may nevertheless be held by the United States Supreme Court to be without the scope of that Section on the ground that he does not in fact have the status that Congress intended to embrace. The United States Supreme Court might well refuse to grant priority to Government tax claims over conventional mortgages and yet grant priority to such claims over leases containing chattel mortgage clauses because they have certain features which are not present in the conventional mortgage loan.

In the case of United States v. Waddill, Holland & Fleming Co., supra, the United States Supreme Court found a number of infirmities in the statutory landlord's lien therein sought to be enforced. In footnote 88 on page 919 of the article by Professor Kennedy, supra, he makes this observation, "Thus, while the landlord's lien urged unsuccessfully in Waddill was statutory, a contractual landlord's lien is ordinarily vulnerable to the same infirmities." Thus, it could be that the United States Supreme Court might hold that a chattel mortgage given to a landlord to secure rent which was promptly recorded was nevertheless inferior to a claim of the Government for federal taxes subsequently accruing.

In this connection it is noted that Internal Revenue Service, Rev. Rule 56–592, dated November 19, 1956, having to do with the status of a "trust mortgage" executed for the benefit of the taxpayer's unsecured creditors, reads, in part, as follows:

"Section 301.6323–1 of the Income Tax Regulations provides that the determination whether a person is a mortgagee, pledgee, purchaser, or judgment creditor entitled to the protection of section 6323(a) of the Code [1954 Internal Revenue] shall be made by reference to the realities and the facts in a given case, rather than to the technical form or terminology used to designate such a person. Thus, a person who is in fact and in law a mortgagee, pledgee, or purchaser, will be entitled to the protection of section 6323(a), even though such person is otherwise designated under the law of a state, such as the Uniform Commercial Code.

\* \* \* \* \* \*

"Under the decisions in the Gilbert and Scovil cases, the terms 'purchaser' and 'judgment creditor' are restrictively interpreted and only those 'purchasers' and 'judgment creditors' who are within the ordinary and usual meaning of those terms are held to be entitled to the protection granted by section 6323 of the Code.

"The same is equally true with respect to the term 'mortgagee.' Thus, an indenture such as herein considered, although purporting to be a mortgage and designated or labeled a 'trust mortgage' does not contain the essential characteristics of a conventional mortgage and is not within the purview of section 6323 of the Internal Revenue Code of 1954."

The lease giving the plaintiff a chattel mortgage lien was, as heretofore noted, not recorded. Section 6323 provides that the tax lien imposed by Section 6321

shall not be valid "against any mortgagee" until notice thereof has been filed. Section 6323 makes no reference to the matter of recording. On its face it would appear that Section 6323 only requires that the mortgage be executed before the notice of federal tax lien has been filed. In the present case the lease containing the chattel mortgage clause was executed years before the claims on which the Government's tax liens are based came into existence. The provisions of Section 6323 are lacking in clarity as to the matter of recording. The Courts are not in agreement as to whether under Section 6323 a mortgage has to be recorded in order to be entitled to the priority given a mortgage in that Section. Some Courts are of the view that a mortgage has to be recorded in order to be afforded such priority. In re F. MacKinnon Mfg. Co., 7 Cir., 1928, 24 F.2d 156, 158; Underwood v. United States, 5 Cir., 1941, 118 F.2d 760, 761; Exchange Nat. Bank of Tulsa v. Davy, D.C.N.D.Okl.1936, 13 F.Supp. 226, 228 (dictum). In the case of United States v. Anders Contracting Co., D.C. W.D.S.C.1953, 111 F.Supp. 700, it was held that an unrecorded conditional sales contract had priority over a subsequently filed Government tax lien. In the case of R. F. Ball Construction Co. v. Jacobs, D.C.W.D.Tex.1956, 140 F.Supp. 60, there was involved an instrument which the Court held to constitute a mortgage. The instrument was not recorded. The Court held that it had priority over a subsequently filed Government tax lien. There were other holdings in the case. On appeal the trial court was affirmed in a short per curiam opinion. United States v. R. F. Ball Construction Co., 5 Cir., 1956, 239 F.2d 384. The status of the particular holding in that case is somewhat uncertain due to the fact that on May 24, 1957, the United States Supreme Court granted the Government's petition for a writ of certiorari.

Under Section 556.3, Code of Iowa 1954, I.C.A., heretofore set out, an unrecorded chattel mortgage is invalid as to "existing creditors or subsequent purchasers without notice." It is clear that in the present case the Government does not have the status of a subsequent purchaser. There is then presented the question as to whether it has the status of an "existing creditor" under the provisions of Section 556.3. In the case of In re Lewis' Estate, 1941, 230 Iowa 694, 298 N.W. 842, at page 845, 137 A.L.R. 562, the Iowa Supreme Court stated:

"This court has uniformly held that the term 'existing creditors', as used in the statute, means general creditors, who have, by execution or attachment, levied upon the mortgaged property, or otherwise acquired a lien thereon, without notice of the mortgage on the part of the creditor, or of the levying officer."

The burden of proof as to notice is upon the party claiming under an unrecorded mortgage. Botna Valley State Bank v. Greig, 1918, 182 Iowa 662, 166 N.W. 104.

It has been held that the Government as the holder of a claim for federal taxes has the status of a "creditor" under state statutes making unrecorded mortgages or deeds of trust void as to "creditors." Underwood v. United States, D.C.E.D. Tex.1939, 37 F.Supp. 824, affirmed 5 Cir., 1941, 118 F.2d 760; Edmundson v. Scofield, D.C.S.D.Tex.1950, 92 F.Supp. 91.

The taxes in question in the present case became due at the time the Imperial Seed Company was required to file its tax returns and from that time on the Government was a creditor of the Imperial Seed Company. Hartman v. Lauchli, 8 Cir., 1956, 238 F.2d 881, 887, certiorari denied 77 S.Ct. 1048. Until those taxes were assessed the Government had the status of an unsecured creditor. The assessment of those taxes gave the Government a lien against all the property of the Imperial Seed Company. The Government acquired liens against the property in question totalling approximately $16,000 before it had notice of the plaintiff's unrecorded mortgage lien. As to the taxes secured by those liens, the situation of the Government was that

of a creditor who had acquired liens upon property included in an unrecorded mortgage without notice of such mortgage.

In the case of In re Lewis' Estate, supra, the Iowa Supreme Court stated, at page 845 of 298 N.W., that "existing creditors" under Section 556.3 means general creditors who by execution or attachment levied upon the mortgaged property "or otherwise acquired a lien thereon" without notice. The Iowa Supreme Court has not purported to limit the application of Section 556.3 to creditors who have secured liens upon the mortgaged property by judicial process.

In the case of Edmundson v. Scofield, D.C.S.D.Tex.1950, 92 F.Supp. 91, there was involved a Government tax lien and a Texas statute, Vernon's Ann.Civ.St. Tex. art. 5490, which rendered unrecorded mortgages void as to "creditors" of the mortgagor. In order to have the status of a "creditor" within the purview of that statute it was necessary that the creditor acquire a lien upon the property included in the unrecorded mortgage. In that case the Government had acquired a tax lien against the property involved. The Court held that such lien gave the Government the status of a "creditor" under the Texas statute.

In the recent case of Schneider v. O'Neal, 8 Cir., 243 F.2d 914, 918, there was involved the question of the right of a trustee in bankruptcy to attack a transaction under Section 70 of the Bankruptcy Act, 11 U.S.C.A. § 110. In the opinion Judge Sanborn stated as follows: "While it is unquestionably true that the trustee stood in the shoes of the bankrupt, it is equally true that he stood in the overshoes of the creditors * * *." In the present case by a combination of circumstances the Government stands in the "overshoes" of an "existing creditor" under Section 556.3 as to its tax liens acquired against the property in question before it had notice of the plaintiff's unrecorded mortgage. In the present case the building which was described in the plaintiff's unrecorded lease was considered as personal property by the parties to the lease. It is so considered by this Court.

It is the holding of the Court that because of the nonrecording of the lease containing the chattel mortgage clause the claim of the Government to the proceeds of the sale of the property involved is prior and superior to the claim of the plaintiff.

Judgment will be entered adjudging and decreeing that the claim of the Government to the net proceeds of the sale of the building and to the net proceeds of the sale of the machinery and equipment contained in it is prior and superior to the claim of the plaintiff. As permitted by Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A., it is hereby ordered that this opinion shall constitute the findings of fact, conclusions of law, and order for judgment in this case.