**In the Matter of Edwin LUFTMAN, Bankrupt.**

United States District Court
S. D. New York.

Sept. 21, 1965.

James J. Pillinger, New York City, for Philip Boyar, judgment creditor.

Julius Haimowitz, New York City, for Adfin Sales Corp., judgment creditor.

FEINBERG, District Judge.

This motion is a contest between two judgment creditors for the proceeds of a bankrupt estate. According to the referee's report, after deducting certain expenses and allowances, a balance of $4,776.34 remains in the estate of the bankrupt, Edwin Luftman. This entire fund is claimed by Philip Boyar, while Adfin Sales Corp. ("Adfin") argues that it is entitled to a pro rata share thereof. The referee rejected Adfin's contention.

The undisputed facts are these: On May 24, 1962, Boyar docketed a judgment against Edwin Luftman for $21,323 in the Westchester County Clerk's office. Execution was returned unsatisfied because shortly before the judgment was docketed Luftman had conveyed his Westchester home to his mother. Almost six months later, on November 13, 1962, Adfin docketed its judgment for $6,213.70 in Westchester County. Meanwhile, Boyar had instituted an action in Supreme Court, Westchester County to set aside Luftman's conveyance to his mother as fraudulent. This action was successful, and judgment was entered on April 23, 1963. Again execution was issued, but before the property could be sold, Luftman filed a voluntary petition in bankruptcy. Subsequently, the trustee in bankruptcy sold the Westchester property; its proceeds comprise the remaining disputed asset of the estate.

The question before the court is whether on these facts Boyar's claim takes priority over Adfin's, or whether both are of equal rank and therefore require a pro rata distribution contrary to the referee's determination.

Under New York law, docketing a money judgment with the county clerk creates a lien on all real property located in that county in which the judgment debtor has an interest.[1] If the judgment debtor has an interest in realty when the judgment is docketed, the lien attaches to that property instantly and takes priority over any lien created by a

1. Section 5203(a) of the N.Y.C.P.L.R., which became effective on September 1, 1963, retains the substance of N.Y.Laws 1939, ch. 359, § 36 (the Civil Practice Act of 1920, § 510, as amended), which it replaced. See comment in N.Y. Sen. Fin. Comm. & Assembly Ways & Means Comm., Third Preliminary Rep. of the Advisory Committee on Practice and Procedure (N.Y.Leg.Doc. No. 17, (1959)), quoted in 7B McKinney's Consol.Laws N.Y.Ann. at 37 (1963): "[Section 5203 (a)] Par. 1 retains the basic priority by docketing system of sections 509 and 510(1)."

subsequently docketed judgment. White's Bank of Buffalo v. Farthing, 101 N.Y. 344, 4 N.E. 734 (1885); Lacaille v. Feldman, 253 N.Y.S.2d 937, 956 (Sup.Ct. 1964); see In re Sherwood's Estate, 83 Hun. 200, 31 N.Y.S. 409 (Sup.Ct.1894). However, with respect to realty acquired by the judgment debtor subsequent to the docketing of a judgment, the lien attaches to such property only upon its acquisition. Consequently, if more than one judgment has been docketed before the debtor acquires the real property, each judgment creates a lien thereon simultaneously with the others the moment the debtor obtains the realty; such judgment creditors share pro rata in the proceeds of realty acquired after their judgments were filed. Hulbert v. Hulbert, 216 N.Y. 430, 440, 111 N.E. 70 (1916) (property inherited after several judgments docketed).

Adfin's papers do not make its contentions clear, but apparently it argues that we have here an instance where the debtor acquired the realty only after both Boyar's and Adfin's judgments had been docketed.[2] Under this theory, the fraudulent conveyance by Luftman to his mother divested Luftman of title until the date of the judgment setting the conveyance aside and, therefore, Boyar's docket entry of May 24, 1962 created no lien until the conveyance was voided and title revested in Luftman on April 23, 1963. By then, Adfin's judgment had been docketed, and the argument is that the liens created by both judgments attached simultaneously, entitling both creditors to share pro rata

■ However, this is not the law. A creditor may treat a fraudulent conveyance as if it had never been made and immediately attach or levy execution on the property conveyed. Or, as Boyar did, he may first "have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim." N. Y. Debtor & Creditor Law, Consol. Laws, c. 12, § 278(1). In practice, to pursue the first alternative (which clearly assumes

that there is a lien on the property) may be unwise; the property may bring far less than its worth if sold at a judicial sale and with its title clouded by the allegedly fraudulent transfer. Often, therefore, a creditor will elect to proceed "in equity" by voiding the transfer first and thereafter levying upon the property. Hearn 45 St. Corp. v. Jano, 283 N.Y. 139, 144–145, 27 N.E.2d 814, 128 A.L.R. 1285 (1940).

■ Whichever method the creditor uses to recover his judgment, the law gives him a lien immediately upon docketing, treating a fraudulent transfer prior thereto as void *ab initio* and correspondingly burdening the title conveyed to anyone not an innocent purchaser for fair value. Thus, as long ago as 1885, the New York Court of Appeals in White's Bank of Buffalo v. Farthing, 101 N.Y. 344 at 346–347, 4 N.E. 734, explained:

> The several judgments became liens on land fraudulently conveyed by
>
> * * * the judgment debtor * * * in the order of their docketing, and they could have been sold on executions issued on the judgments. The plaintiffs [*sic*], however, elected to bring its action to remove the alleged fraudulent obstruction created by the conveyances. * * * If it [the court] simply sets aside the fraudulent conveyances, the land will remain charged with the liens of the several judgments in the order of their docketing * * *.

Similarly, five years later, in adopting the opinion of the court below in a case involving the proceeds of a foreclosure sale of lands subject to judgment liens, the Court of Appeals again concluded in Wilkinson v. Paddock, 125 N.Y. 748, 27 N.E. 407 (1890), affirming mem. 57 Hun. 191, 11 N.Y.S. 442, 445, 446 (Sup. Ct.1890):

> The real estate having been converted into money, the several parties are entitled to be paid out of the fund the equivalent of their respec-

---

2. It may be that Adfin is also making another argument, which is discussed below.

tive interests, in the order of their priority as between each other.

\* \* \* \* \* \*

The doctrine of the authorities seems to be to the effect that, as to real estate, judgment creditors acquire liens thereon in the order in which their judgments are docketed, and that their priority is not affected by suits brought to set aside a fraudulent transfer of such real estate.

Cf. Feuer v. Schaller, 115 Misc. 229, 187 N.Y.S. 530, 531 (Sup.Ct.1921) (dictum) (construing N.Y. Consol. Laws 1909, ch. 52, § 263, predecessor of N.Y. Debtor & Creditor Law, § 278). As against these authorities, Adfin relies on language in White's Bank v. Farthing, supra, Hulbert v. Hulbert, supra, and De La Vergne v. Evertson, 1 Paige 181 (N.Y.Ch.1828). However, White's Bank offers no support to Adfin, and Hulbert, as indicated above, deals with after-acquired property. As for De La Vergne, it is true that the court held that judgment creditors share "ratably" as to the interest due on their judgments; however, the court also stated, id. at 182, that "the principal of their judgments must be paid out of the fund according to their order of priority."

It is clear then that Adfin's chief argument is without merit. There is an intimation in Adfin's papers that it may also be contending that under the Bankruptcy Act all judgment creditors whose judgments were docketed more than four months before the bankruptcy should be treated alike and that, therefore, it is entitled to a pro rata share of the estate.[3] There is no authority for this position; to the contrary, the cases are clear that "where there are conflicting claims of [valid] liens against the same property \* \* \* nonbankruptcy law—generally the law of the situs of the property—must determine the relative priority of the respective liens." See 4 Collier, Bankruptcy ¶ 67.03[3], at 61 n. 41 (14th ed. 1964), citing In re F. MacKinnon Mfg. Co., 24 F.2d 156 (7th Cir.

1928); In re C. Lewis Lavine, Inc., 36 F.Supp. 351 (D.N.J.1941). As indicated above, under New York law, Boyar's lien is prior to Adfin's.

Boyar has also brought to the attention of the court the fact that the second attorney for the trustee had consented to having his fee fixed at $1,000, although he had originally requested $1,500. The record supports Boyar,[4] and the fee of $1,250 awarded this attorney will be reduced accordingly. Boyar also requests a reduction in the fee recommended for the first attorney for the trustee. However, after reviewing the papers, the referee's recommendation is affirmed.

Accordingly, the referee's report and recommendations are approved except that the fee recommended for the successor attorney for the trustee is reduced to $1,000. Settle order on notice.

---

3. Adfin's Reply Memorandum, p. 3, claiming that "In bankruptcy, the judgment creditors are on the same level. \* \* \*"

4. Transcript of Final Meeting of Creditors, p. 3.