GRAFTON L. WILSON *vs.* CENTRAL VERMONT RAILWAY COMPANY.
SAME *vs.* SAME.

Suffolk.    March 30, 1921. — May 28, 1921.

Present: RUGG, C. J., DE COURCY, PIERCE, CARROLL, & JENNEY, JJ.

*Equity Jurisdiction,* To reach and apply assets not attachable at law.    *United States of America.*

A suit in equity under G. L. c. 214, § 3, cl. 7, cannot be maintained by a creditor of a railroad corporation against the railroad corporation alone to reach and apply in payment of the debt owed to the plaintiff claims of the defendant against the United States of America under the U. S. St. 1918, c. 25, § 1, or under U. S. St. 1920, c. 91, for which no federal treasury warrant has been issued and which still are largely undetermined, the fact that the United States of America cannot be sued except by its consent not giving the court jurisdiction to adjudicate its rights when it is not a party and cannot be heard, and the claim not being property " in the hands, possession or control of the debtor independently of any other person."

Two BILLS IN EQUITY, filed in the Superior Court respectively on November 6 and November 11, 1920, solely against the Central Vermont Railway Company, to reach and apply, in payment of bonds of the defendant held by the plaintiff, an alleged claim of the defendant against the United States of America under the transportation act of 1920 (41 U. S. Sts. at Large, 456) and the federal control act (40 U. S. Sts. at Large, 451).

In the Superior Court, the defendant demurred to both bills, upon the following grounds among others:

" 5. Because the United States of America, from whom it is alleged moneys sought to be applied in payment of the plaintiff's debt are due to the defendant, is not joined as a party defendant.

" 6. Because the United States of America, from whom it is alleged moneys sought to be applied in payment of the plaintiff's debt are due to the defendant, cannot be impleaded in this court."

The demurrers were heard by *Lawton,* J., and were sustained, and by order of *Wait,* J., final decrees were entered dismissing the bills.  The plaintiff appealed.

*G. L. Wilson, pro se.*

*P. N. Jones,* for the defendant.

DE COURCY, J.  These two suits were brought under R. L.
c. 159, § 3, cl. 7, to reach and apply certain property or interests of
the defendant in payment of its overdue bonds held by the plain-
tiff.  The records in the two suits are identical except that the
first was brought upon bonds of the total face value of $42,000,
and the second upon bonds totalling $6,000.  The cases are here
on the plaintiff's appeal from decrees of the Superior Court, sus-
taining the defendant's demurrers, and dismissing the bills.

The bills allege in substance, that under the " Transportation
Act, of 1920 " the Interstate Commerce Commission, as soon as
practicable after September 1, 1920, is required to ascertain and
certify to the Secretary of the Treasury the amounts necessary to
make good to carriers certain guarantees of the railway operating
income provided for by that act; that said Secretary is directed
" thereupon to draw warrants in favor of each such carrier;"
and that the commission has certified to the Secretary of the
Treasury that the sum of $200,000 is necessary to make good said
guarantee to the defendant.

The bills further allege that under the federal control act of
March 21, U. S. St. 1918, c. 25, § 1, the defendant is entitled to
certain compensation in lieu of its railway operating income, —
the precise nature of which is unknown to the plaintiff.  He prays
that these claims against the United States be reached and applied
in payment of his debt; that the defendant be ordered to prosecute
said claims until the issue of warrants based thereon; and to
assign such warrant if and when issued to some person to be ap-
pointed by the court; that enough of the proceeds be retained by
that person to satisfy the plaintiff's claim; and that the debt due
to the plaintiff be established, and the defendant ordered to pay
the same.

The federal control act of 1918 provided that during the period
of such federal control the carrier making the agreement provided
for in § 1 " shall receive as just compensation an annual sum,
payable from time to time in reasonable installments, for each
year and *pro rata* for any fractional year of such federal control,
not exceeding a sum equivalent as nearly as may be to its average
annual railway operating income for the three years ended June
thirtieth, nineteen hundred and seventeen.  That any railway
operating income accruing during the period of federal control in

excess of such just compensation shall remain the property of the United States." Elaborate provisions were made in the act for the computation and certification of annual operating income, for maintenance, repairs, renewals and depreciation of the property, for the determination of unadjusted claims, settlement of losses, and other details. The bill alleges that the defendant entered into a written agreement as provided for in the act; but it fails to allege what are its terms, or what compensation thereunder, if any, is payable to the defendant. Section 200 (a) of the Transportation Act of 1920 (41 U. S. Sts. at Large, 457), provided that federal control should terminate on March 1, 1920, and the guaranty period was the six months beginning on that date. This act provided with much elaboration for such details as the settlement of matters arising out of federal control, and the reimbursement to carriers for deficits during that control. It guaranteed that "the railway operating income of such carrier for the guaranty period as a whole shall not be less than one-half the amount named in such contract as annual compensation." § 209 (c) (1). It stipulated that if for the guaranty period as a whole the operating income is in excess of the minimum operating income guaranteed, the carrier shall pay the amount of such excess into the treasury of the United States. Advances from time to time on account of the guaranty may be made on certificate of the Interstate Commerce Commission. The certification of amounts necessary to make good each guaranty is provided for in § 209 (g), as set out in the bill.

The jurisdiction to reach and apply property under the statute depends upon the fact that the property is of such a nature that it " cannot be reached to be attached or taken on execution in an action at law." *Hoshor-Platt Co.* v. *Miller,* 190 Mass. 285. It is urged by the defendant, however, that the compensation coming to it could be reached by trustee process in an action at law, if it were due from a private person; because the statute relating to trustee process expressly provides that " money or any other thing which is due to the defendant absolutely and without any contingency may be so attached before it has become payable." R. L. c. 189, § 23 (G. L. c. 246, § 24.) It is unnecessary to pass upon this defence, as a conclusive objection to the bill is that the United States, in whose possession the property is alleged to be, and which is materially interested in the issues of its indebtedness

to the defendant, and the assignability thereof by the defendant, is not made a party. And the fact that the United States government cannot be sued except by its consent, does not give the court jurisdiction to adjudicate its rights, when it is not a party and cannot be heard. *William J. McCarthy Co.* v. *Rendle,* 222 Mass. 405. In *Houston* v. *Ormes,* 252 U. S. 469, cited in behalf of the plaintiff, the Secretary of the Treasury was made a party; and the suit was not one against the government, within the rule that the government cannot be sued except by its consent, but was against an official, to compel the performance of a ministerial act.

The plaintiff contends that he can maintain the bill in its present form under the language of the statute which authorizes suits although ". . . the property sought to be reached and applied is in the hands, possession or control of the debtor independently of any other person." Under this amendment (St. 1884, c. 285) of the original statute it has been held that letters patent of the United States in the possession and control of the debtor can be reached. *Wilson* v. *Martin-Wilson Automatic Fire Alarm Co.* 149 Mass. 24; *S. C.* 151 Mass. 515. *McCann* v. *Randall,* 147 Mass. 81, decided that a United States treasury draft, which was issued upon the award of the Court of Commissioners of Alabama Claims, and was found here unindorsed in the custody of the payee's agent, could be reached by a creditor of the payee. But in the present case no treasury warrant has been issued. The obligation of the government of the United States, which according to the allegations of the bill was largely undetermined, clearly was not property "in the hands, possession, or control of the debtor independently of any other person," when the suit was brought. See *Amy* v. *Manning,* 149 Mass. 487, 489, 490; *Hopedale Manuf. Co.* v. *Clinton Cotton Mills,* 224 Mass. 193.

It is unnecessary to consider the applicability of U. S. Rev. Sts. § 3477, prescribing the forms for assignments of claims against the United States. See *Jennings* v. *Whitney,* 224 Mass. 138, 143; *Price* v. *Forrest,* 173 U. S. 410. As bearing on the question of assignability, however, we cannot overlook the fact that the government of the United States is substantially interested in the amounts payable to the defendant under the statutes and contracts in question; and that the evident purpose of Congress was

to insure to the defendant an income for the operating expenses of its railroad, not to provide a fund for the payment of its bonded indebtedness. See *Burnham* v. *Bowen,* 111 U. S. 776.

In each case, the interlocutory decree sustaining the demurrer, and the final decree dismissing the bill, must be affirmed, with costs.

*Ordered accordingly.*