BANK OF BOSTON *vs.* ROBERT C. HAUFLER
(and a companion case[1]).

Suffolk. March 13, 1984. — August 30, 1985.

Present: ARMSTRONG, PERRETTA, & KASS, JJ.

*Trustee Process. Lien. Damages,* Attorney's fees, Interest. *Interest. Judgment,* Execution.

In actions by two banks, each seeking to recover on a promissory note against the same defendant and each seeking to establish the priority of its lien on a portion of the proceeds paid by the Commonwealth to attorneys for the defendant as a result of a land taking, the judge erred in ruling that the first bank had priority as a result of an execution of judgment which preceded an attachment by trustee process obtained by the second bank, where, before the execution and attachment, each bank had obtained an injunction restraining the defendant and his attorneys from disposing of the proceeds to be received by the defendant as a result of the land taking, and where neither injunction lien had priority over the other, as both attached at the same time when the Commonwealth paid the proceeds to the defendant's attorneys. [672-674]

The judge in an action by a bank on a promissory note did not abuse his discretion in refusing to award the bank attorneys' fees beyond those awarded under the terms of a stipulation for the assessment of damages incorporated in a document designated "judgment of assessment of damages," which disposed of only one count of the bank's complaint. [674]

CIVIL ACTIONS commenced in the Superior Court on January 23 and August 17, 1976, respectively.

---

[1] The companion case is Bank of New England *vs.* Robert C. Haufler. These actions (and two others not involved in these appeals) were consolidated in Superior Court because the several claimants sought satisfaction of their claims from a common fund. Additional claimants to the fund were permitted by the court to intervene in the consolidated actions. The intervening claimants who have appealed are Elizabeth K. Haufler, Diane H. Miers, G. Steven Miers, John T. Mahoney, and Louis Vazza.

The cases were heard by *Hiller B. Zobel,* J.

*Brian E. Meade* for Robert C. Haufler.

*Charles S. Kelly* for Elizabeth Haufler & others.

*Francis J. Sally (James E. O'Connell, Jr.,* with him) for Bank of New England.

*Robert B. Carpenter* for Bank of Boston.

ARMSTRONG, J. These cases involve the appeals, consolidated in this court, of several parties from judgments entered in the Superior Court disposing of claims to (and totaling substantially in excess of) a portion of the proceeds paid by the Commonwealth to attorneys for Robert C. Haufler as a result of a land taking at Columbia Point in Boston. The proceeds, paid September 27, 1978, amounted to $1,511,040. On September 29, 1978, Haufler, two creditor-claimants, and Haufler's attorneys entered into a stipulation, approved by the court, which provided for the payment of attorneys' and expert witnesses' fees and for the payment of half the balance to Haufler's partner.[2] The other half of the balance ("the fund") was to be retained by Haufler's attorneys as escrow agent. Later settlements amounting to $265,000, offset in part by accumulated interest, left the fund on February 10, 1981, at $358,804.39. The judgments appealed from principally concern the disposition of that sum.

The chronology, generally crucial to determining priorities of liens, is as follows. Haufler commenced his land damage action in 1969. See *Haufler* v. *Commonwealth,* 372 Mass. 527 (1977). On January 23, 1976, the Bank of Boston[3] sued Haufler to establish his indebtedness on a promissory note for $151,000. On August 17, 1976, the Bank of New England[4] sued Haufler to establish his indebtedness on several promissory notes and guarantees. On August 18 the court issued a temporary order in the Bank of New England's action restraining Haufler and

---

[2] Under the terms of the stipulation the initial principal of the fund should have been $533,990. The record indicates that the initial principal was treated as being $513,990. The difference is not explained, and we, like the parties, treat the latter figure as accurate.

[3] Then named The First National Bank of Boston.

[4] Then named New England Merchants National Bank.

his agents and attorneys from disposing of his interest in the proceeds of the land damage action to the extent of $300,000. On September 16 a preliminary injunction to the same effect was entered, with the amount increased to $400,000. A year later, on November 25, 1977, the Bank of Boston obtained an order enjoining Haufler, his agents and attorneys from disposing of the proceeds of the land damage action to the extent of $230,000. The Bank of Boston had also sought to enjoin the Commonwealth in like manner (the complaint had a count in the nature of a statutory bill to reach and apply, see G. L. c. 214, § 3[6]); the judge declined to enjoin the Commonwealth, and the Bank of Boston filed an interlocutory appeal.

On April 5, 1978, the court entered a judgment for the Bank of Boston for $234,785.21, plus costs.[5] On April 10, 1978, a stipulated judgment was entered in the land damage action, and on September 22, 1978, the Commonwealth paid Haufler's attorneys pursuant thereto. On September 29, 1978, the two banks appeared before a single justice of the Supreme Judicial Court in a further attempt to obtain priority in the land damage proceeds. The Bank of Boston sought and was granted a writ of execution (Mass.R.Civ.P. 69, 365 Mass. 836 [1974]) in the amount of its judgment (plus costs). The Bank of New England sought and obtained a writ of attachment on trustee process (Mass.R.Civ.P. 4.2, 365 Mass. 740 [1974]) against Haufler's attorneys. The Bank of Boston delivered its writ to the sheriff shortly before the sheriff received that of the Bank of New England. The sheriff served the writs on Haufler's attorneys in the order received, at 4:20 P.M. and 4:21 P.M., on September 29, 1978. Four months later in *First Natl. Bank* v. *Haufler,* 377 Mass. 209 (1979), the Supreme Judicial Court ruled that, in light of the Commonwealth's payment to Haufler's attorneys, the issue raised by the Bank of Boston's appeal from the judge's order denying injunctive relief against the Commonwealth was moot.[6]

---

[5] The breakdown was: principal, $155,000; interest to March 30, 1978, $59,785.21; attorneys' fees, $20,000. The costs were $45.80.

[6] The later decision in *Massachusetts Elec. Co.* v. *Athol One, Inc.,* 391 Mass. 685, 687-690 (1984), makes clear that the bank's appeal would have been unavailing in any event.

Thereafter trial was held in respect of the Bank of New England's claim against Haufler. Joined with it for trial were claims by several persons who alleged that Haufler had made assignments to them of interests in the land damage recovery. These included Haufler's wife (who claimed twenty per cent of Haufler's interest), his daughter (ten percent), his daughter and son-in-law (ten percent), two business associates named Vazza and Mahoney (twenty percent), and one Stewart, a real estate broker not otherwise associated with Haufler ($30,000). The jury found against each of the assignment claimants except Stewart (the latter not being involved in this appeal), and a judgment was entered accordingly.[7] The jury found for the Bank of New England in the amount of $561,899.12, and judg-

---

[7] The appeals from this judgment (by the "assignment claimants") raise two issues: that in his charge to the jury the trial judge may have misassigned the burden of proof as to the character (fraudulent or not) of the alleged assignments (as to which see *Mason* v. *Wylde,* 308 Mass. 268, 282-283, cert. denied, 314 U.S. 638 [1941]; *Thomas E. Hogan, Inc.* v. *Berman,* 310 Mass. 259, 262 [1941]; *Ward* v. *Grant,* 9 Mass. App. Ct. 364, 367 [1980]) and that the judge erred in not allowing a copy of the alleged Vazza-Mahoney assignment to be put in evidence. The assignment claimants are precluded from raising the first point on appeal by their failure to make a proper objection to the judge's instructions. See generally Mass.R.Civ.P. 51(b), 365 Mass. 816 (1974). Although the assignment claimants had stated their position on the burden-of-proof question at two earlier points in the extended proceedings, they were obligated, when the judge specifically called for any objections at the close of the charge, to put their objections on the record at that time. Their counsel instead responded that he had no objection to the instructions. That colloquy brings the case within the operation of the usual rule, represented by such cases as *Kane* v. *Fields Corner Grille, Inc.,* 341 Mass. 640, 646-647 (1961), *Ezekiel* v. *Jones Motor Co., Inc.,* 374 Mass. 382, 392-393 (1978), *Simon* v. *Solomon,* 385 Mass. 91, 107 (1982), and *Weeks* v. *Harbor Natl. Bank,* 388 Mass. 141, 146-147 (1983). See Smith & Zobel, Rules Practice §§ 51.5-51.6 (1977 & Supp. 1985). The refusal to admit in evidence a photocopy of the alleged assignment to Vazza and Mahoney on the ground of Vazza's negligence in losing the original was a matter which lay at least within the discretion of the judge. See *Fauci* v. *Mulready,* 337 Mass. 532, 540, 542 (1958); *Old Colony Trust Co.* v. *Shaw,* 348 Mass. 212, 219 (1964); *Buker* v. *Melanson,* 8 Mass. App. Ct. 325, 330-331 (1979); *Capitol Bank & Trust Co.* v. *Richman,* 19 Mass. App. Ct. 515, 520-522 (1985). There was support in the evidence for his finding that the attorney had returned the original to Vazza and that the latter had failed to take prompt action when he allegedly discovered he no longer had the original.

ment entered for the bank in that amount, plus interest and costs from the date of the complaint.[8] By separate order the judge ruled that the Bank of Boston, based on its execution of September 29, 1978, had the prior claim to the fund held by Haufler's attorneys to the extent of its April 5, 1978, judgment ($234,785.21). Applying the remainder of the fund to the debt owed the Bank of New England, and after subtracting from each a pro rata share of the attorneys' compensation for holding and investing the fund ($7,820), the escrow fund was ordered distributed to the two banks in the following amounts: Bank of Boston, $229,554.16, and Bank of New England, $121,430.23.

In determining the priority of the Bank of Boston's execution lien over the Bank of New England's attachment lien by trustee process, the judge did not discuss the question whether the earlier injunctions granted to both banks had created liens

---

[8] The defendant Haufler appealed from that judgment on the ground that the evidence did not support the verdict. To the extent that his short, pro se brief is intelligible at all, it is rendered unhelpful to us by its reliance on Haufler's own testimony rather than the evidence favorable to the bank, which, of course, the jury could properly elect to believe. The evidence adduced by the bank, including the notes signed by Haufler (he did not contest the validity of the signatures) and the bank's record of principal and interest payments thereon, all capably marshaled in the bank's appellee brief responding to Haufler, support the jury's verdict to the penny. No point would be served by rehearsing that evidence here. The bank's computer printouts were properly admitted as business records under G. L. c. 233, § 78. *Commonwealth* v. *Hogan,* 7 Mass. App. Ct. 236, 250, 252, *S.C.,* 379 Mass. 190 (1979). Liacos, Massachusetts Evidence 331 (5th ed. 1981). The summary prepared by the loan processing officer was admissible, in the judge's discretion, as a matter of convenience to the jury. *Dyecraftsmen, Inc.* v. *Feinberg,* 359 Mass. 485, 487 (1971). 4 Wigmore, Evidence § 1230 (Chadbourn rev. 1972). Compare *Cornell-Andrews Smelting Co.* v. *Boston & Providence R.R.,* 215 Mass. 381, 390-391 (1913). Not argued by Haufler, but apparent from examination of the bank's records which were the basis for the jury's verdict, is that the addition of interest to the jury's verdict from the date of the complaint (see G. L. c. 231, § 6C) results in some double interest since the jury's figure of $561,899.12 included interest at the contract rate of February 17, 1978, with respect to some notes and to July 31, 1980, with respect to others. Accordingly the interest award in the judgment will be modified to avoid the duplication.

before the creation of the execution and attachment liens.[9] The Bank of Boston, relying on *William J. McCarthy Co.* v. *Rendle,* 222 Mass. 405 (1916) (see also *Wilson* v. *Central Vermont Ry.,* 239 Mass. 80 [1921], and *Massachusetts Elec. Co.* v. *Athol One, Inc.,* 391 Mass. 685 [1984]), argues that no lien could attach as long as the proceeds were held by the Commonwealth because the Commonwealth could not be made subject to the injunction. That is true as far as it goes, but it does not preclude the attachment of a lien after the Commonwealth paid the proceeds to Haufler's attorneys on September 27, 1978. Haufler's attorneys were subject to the injunctions which had been obtained by both banks, either because they were expressly enjoined (as in the injunction obtained by the Bank of New England) or because their holding the moneys as Haufler's attorneys was tantamount to Haufler's holding the money himself (he being subject to the injunction). The injunctions for both banks, running against one in possession of the proceeds, "charged [the proceeds] with an equity for the security of the [banks]," *Snyder* v. *Smith,* 185 Mass. 58, 62 (1904), or, in other words, constituted an equitable attachment of the proceeds. *Id.* at 61-62. See also *Gay* v. *Ray,* 195 Mass. 8, 14-16 (1907); *McCarthy* v. *Rogers,* 295 Mass. 245, 246-247 (1936); *Gulda* v. *Second Natl. Bank,* 323 Mass. 100, 104 (1948); *Salvucci* v. *Sheehan,* 349 Mass. 659, 661-662 (1965); *Madden* v. *Madden,* 359 Mass. 356, 364, cert. denied, 404 U.S. 854 (1971). Nolan, Equitable Remedies § 382, at 460-462

---

[9] The Bank of New England suggests that the judge may have taken the view that the stipulation entered into by both banks (as well as by Haufler and his attorneys) on September 29, 1978, had the effect of discharging all prior liens. Nothing in the stipulation suggests that it was meant to have such an effect. Rather, the obvious purpose of the stipulation was simply to facilitate the payout of attorneys' and expert witnesses' fees and the share of the proceeds belonging to Haufler's partner. To give the stipulation the additional effect of waiving the banks' preexisting liens on Haufler's share of the proceeds would be to impute a bizarre and professionally questionable intention to experienced and capable attorneys. Unless required by some rule of law, waiver of valuable rights should not be lightly inferred. See, e.g., *Sheehan* v. *Commercial Travelers Mut. Acc. Assn. of America,* 283 Mass. 543, 552 (1933); *Sisters of the Holy Cross* v. *Brookline,* 347 Mass. 486, 495 (1964).

(1975 & Supp. 1985). The equitable liens thus created were prior in time to the execution and attachment liens of September 29, 1978, and were therefore better in right. See *Meteor Prod. Co.* v. *Societe D'Electro-Chemie et D'Electro-Metallurgie,* 263 Mass. 543, 548 (1928); *Goodspeed's Book Shop, Inc.* v. *State St. Bank & Trust Co.,* 8 Mass. App. Ct. 147, 149 (1979). Being more than enough to exhaust the fund to which all the liens applied, the equitable liens governed disposition of that fund to the exclusion of the later-created liens.

The Bank of New England argues that it has a prior claim to the fund over that of the Bank of Boston because the injunction on which its lien is based was issued on September 16, 1976, over a year before an injunction was issued in favor of the Bank of Boston. An injunction by itself, however, does not operate to create a lien on property held by one (in this case, the Commonwealth) not subject to the injunction. The earliest the lien could attach to the proceeds was when the Commonwealth paid them over to Haufler's attorneys, who were then subject to the two injunctions. Cf. *In re Fader Motor Co.,* 245 A.2d 156, 159 (Del. Ch. 1968). The rule generally accepted is that liens already in place attach to after-acquired property at the same time and that none of the liens has priority over the others (with respect to such property) on the basis of its earlier creation. *In re Luftman,* 245 F. Supp. 723, 725 (S.D.N.Y. 1965). *United States* v. *Fleming,* 474 F. Supp. 904, 908 (S.D.N.Y. 1979). *In re Estate of Clausen,* 258 Iowa 324, 329-330 (1965). *Hulbert* v. *Hulbert,* 216 N.Y. 430, 440 (1916). *Zink* v. *James River Natl. Bank,* 58 N.D. 1, 10-13 (1929). *Murphy* v. *Connolly,* 81 S.D. 644, 651-652 (1966). Annot., 67 A.L.R. 1301 (1930). 49 C.J.S. Judgments § 484b, at 924 (1947). 46 Am. Jur. 2d Judgments § 284, at 494 (1969). Applying that principle, we hold that the fund, after payment of the amount allowed for the services of Haufler's attorneys in holding and investing it, is to be applied to the judgments of the two banks in proportion to the amounts of their respective liens (the liens in each case being less than the judgments they secure).[10]

---

[10] The lien of the Bank of Boston was for $230,000, and the amount of its judgment was $234,785.21. The lien of the Bank of New England was

A final question is raised by the Bank of Boston concerning the judge's refusal to award it attorneys' fees beyond those awarded under the terms of a stipulation for the assessment of damages incorporated in the so-called "judgment of assessment of damages" approved by a judge March 30, 1978, and entered April 5, 1978.[11] Although dubbed a "judgment," that document was not one in legal effect, because it disposed of only count one of the bank's complaint. Count two (to reach and apply the proceeds of the land damage action) remained then undecided. There was no "express determination that there [was] no just reason for delay" nor an "express direction for the entry of judgment." Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974). By the terms of that rule, the "judgment of assessment of damages" remained "subject to revision at any time before the entry of judgment adjudicating all the claims . . . ." Determining an appropriate award to make for attorneys' fees under the provision of the note allowing costs of collection calls for a discretionary judgment, *Robbins* v. *Robbins,* 19 Mass. App. Ct. 538, 543 (1985), and in making that determination the judge was not bound by the terms of the stipulation to conclude that the $20,000 award made on March 30, 1978, was inadequate to cover the services rendered after that date. *Gurman* v. *Stowe-Woodward, Inc.,* 302 Mass. 442, 448 (1939). *Lincoln Elec. Co.* v. *Sovrensky,* 305 Mass. 476, 479 (1940). The judge could properly apply conservative principles, given that the attorneys' fee would operate as a charge on a disputed and inadequate fund. *Lewis* v. *National Shawmut Bank,* 303 Mass. 187, 191 (1939). Lacking the full record of proceedings we are not in a position to review the judge's express finding that $20,000 was "fair, adequate, and reasonable" compensation for all services rendered by counsel to the date of judgment.

for $400,000, and the amount of its judgment was $561,899.12. Because the two banks share pro rata in both principal and interest, it is unnecessary for us to consider a question raised by the Bank of Boston as to the propriety of a ruling, the practical effect of which was to apply all interest to the judgment obtained by the Bank of New England.

[11] This was the judgment for the Bank of Boston against Haufler for $234,785.21, described in note 5, *supra*.

The following entries are to be made. In the case of Bank of New England *vs*. Haufler, the judgment is to be modified by reducing the interest added to the jury's verdict in the following manner: interest is to be computed on $83,567.50[12] thereof from February 18, 1978, to July 31, 1980; the amount of interest so computed is to be added to the jury's verdict; interest on the resulting sum is to be computed from August 1, 1980. As so modified, the judgment is affirmed. In the case of Bank of Boston *vs*. Haufler, the interest specified in the judgment entered February 12, 1981 ("from date of complaint"), is amended to read "from March 31, 1978," and, as so modified, the judgment is affirmed. In both cases, the order dated February 11, 1981, allocating the fund, is reversed, and the cases are remanded for the entry of a new order consistent with this opinion.[13] The judgment (entered under no. 11992) dismissing the claims of Elizabeth K. Haufler, Diane H. Miers, and G. Steven Miers, and Louis Vazza and John T. Mahoney is affirmed.

*So ordered.*

---

[12] That figure represents the amounts indicated by the bank's records to be owed for unpaid interest through February 17, 1978, on the notes executed May 29, 1974, and May 12, 1975, the principal amounts of which were paid on February 17, 1978. The notes executed May 15, 1975, paid in part on February 17, 1978, are treated like those on which interest was computed at the contract rate through July 31, 1980, because the records put in evidence leave uncertain whether the figure alleged to be owed ($121,585.89) includes interest through February 17, 1978, or July 31, 1980. Compare the treatment (on the bank's summary printout) of the note executed March 29, 1976.

[13] Proper form would call for the provisions of the order dividing the fund to be included in the judgments establishing the liabilities of Haufler to the two banks.