Ruma, J.
On October 14, 1981, plaintiff Commercial Bank & Trust Company (“Bank”) instituted this action in three counts to recover the balances due on three promissory notes signed by the defendants. Count I sought judgment against the three defendants, Peter J. Georges, Nona E. Georges and P. J. G., Inc., in the sum of $9,037.36 plus interest, costs and attorney’s fees. Counts II and III demanded judgment only against defendant Peter J. Georges (“Georges”) in the respective amounts of $10,818.87 and $15,919.36, plus interest, costs and attorney’s fees on each count.
The defendants filed a timely counterclaim against the Bank. Count I of the counterclaim sought the recovery by all three defendants of $3,000.00 in surplus funds remaining after the Bank’s foreclosure sale of the defendants’ property. Counts II and III of the counterclaim were filed by Georges only. Count II sought $25,000.00 in damages for service fees and a broker’s commission allegedly earned by Georges in his management and sale of property owned by the Bank in Foxboro, Mass. In Count Illof the counterclaim, Georges sought recovery of $10,000.00 for personal property for which the Bank had allegedly failed to make payment.
All three counts of the Bank’s complaint and Count I of the defendants’ counterclaim became the subject of an Agreement for Judgment executed by the parties on July 14, 1983. The subsequent history and legal effect of this Agreement has been placed in issue by the defendants on this appeal, as discussed below.
Counts II and III of the counterclaim were tried in the Lowell Division of the District Court Department in 1987. The trial court issued extensive subsidiary findings of fact, and entered ultimate findings on Count II for plaintiff-in-counterclaim Georges in the amount of $3,500.00, and on Count III for the Bank as defendant-in-counterclaim. Defendant Georges has prosecuted an *24 appeal to this Division on a charge of error in the court’s disposition of requests for rulings of law pertaining to Counts II and III of the counterclaim.
A final judgment on all counts of the complaint and counterclaim was entered on March 11, 1988.

1. AGREEMENT FOR JUDGMENT.

The Agreement for Judgment originally signed by all parties on July 14,1983 provided for the dismissal with prejudice of Count I of the counterclaim, and preserved Georges’ right to proceed to trial on Counts II and III of the counterclaim. The Agreement also provided for the Banks’ recovery on all counts of the complaint as follows:
1) Count I, Judgment for the plaintiff against the defendant PJG, Inc. in the amount of $7,537.36 plus interest from November 5,1980.
2) Count I, Judgment for the plaintiff against the defendants Peter J. Georges and Nona E. Georges in the amount of $5,337.36 plus interest from November 5, 1980.
3) Count II, Judgment for the plaintiff against the defendant Peter J. Georges in the amount of $11,268.87 plus interest from the date of filing the complaint, October 14,1981.
4) Count III, Judgment for the plaintiff against the defendant Peter J. Georges in the amount of $14,157.04 plus interest from the date of filing the complaint.
The remaining provisions of the Agreement reserved the Bank’s right to file a motion for assessment of attorney’s fees on the promissory notes; and stipulated the parties’ disagreement as to the applicable rate of interest to be recovered and their consequent need to resort to the court for a decision on this question. The trial court docket for July 14,1983 states: “See agreement for judgment in papers.” No Dist./Mun. Cts. R. Civ. P., Rule 54(b) motion for separate judgment was filed by the parties.
On July 20,1983, the Bank filed a motion for the assessment of attorney’s fees. No action was taken on this motion.
On July 27,1983, the trial court ruled that interest would be charged at the rate provided for in the promissory notes, rather than at the statutory rate. The court ordered that damages and interest were to be calculated in accordance with a schedule attached to a memorandum and order signed by the judge. The memorandum and order were entered on the docket.
Two years later, on July 18, 1985, the defendants filed a “Motion to Vacate and Amend Agreementfor Judgment” on the grounds that paragraphs 1) and 2) of the Agreement permitted a double recovery by the Bank of the principal and interest due on the single promissory note which was the subject of Count I of the complaint. The defendants requested that the Agreement be amended to indicate that satisfaction of either provision 1) or 2) constituted satisfaction of both provisions. The defendants’ motion was “allowed as to damages only” (Viola, J.) on July 23,1985, and the case was continued for one weekfor an assessment of damages. Apparently, no hearing was held on July 30,1985 and no assessment of damages was ever undertaken.
A hearing for the assessment of counsel fees was held two and one-half years later on December 24, 1987. The parties agreed in open court to the Bank’s recovery of $5,000.00 in counsel fees on Counts II and III of the complaint, and stipulated that no.fees would be assessed on Count I.
When the case came to trial in 1987 on Counts II and III of the counterclaim, the defendants endeavored to be heard on the question of damages on Counts I - III of the complaint. The court (Basile, J.) ruled that the Agreement for Judgment of July 14,1983 would stand and that as a matter of law the court *25 could not disturb it in the absence of fraud. The report states that no fraud was alleged or proved.
The judgment, which was entered on March 11,1988 on Counts I, II and III of the complaint, incorporated clauses 1) through 4) of the parties’ Agreement, the court’s July 27,1983 ruling on interest rates and the attorney’s fees agreed to by the parties.
The defendants thereafter filed a motion to amend judgment or for a new trial on the grounds that the parties’ July 14,1983 Agreement for Judgment had been vacated by the court in 1985, and should not have formed the basis of the judgment entered on March 11, 1988. The defendants requested a new trial on all complaint counts. The defendants’ motion was denied.
Agreements for judgment, which dispose of all claims between all parties, constitute a waiver of appeal by the parties and a consent to the entry of final judgment pursuant to the terms of the agreement. Kacouris v. Loukas, 333 Mass. 44, 48-49 (1955). In the absence of fraud, an agreement for judgment is as binding upon the parties as a judicial resolution of the issues raised in the pleadings. Blais v. Quincy Mutual Fire Ins. Co., 361 Mass. 68, 70-71 (1972); Fishman v. Alberts, 321 Mass. 280, 281 (1947); Medford v. Corbett, 302 Mass. 573, 574-575 (1939); Ansara v. Regan, 276 Mass. 586, 589 (1931). The mere execution of an agreement, however, does not accord it the legal status of a binding judgment. Kilroy v. Barron, 326 Mass. 464, 466 (1950). An agreement for judgment must be filed pursuant to Dist./Mun. Cts. R. Civ. P., Rule 58(a) and entered chronologically on the docket in accordance with Dist./Mun. Cts. R. Civ. P., Rule 79(a).
The parties’Agreement of July 14,1983 was filed and entered on the docket. The question dispositive of this aspect of the defendants’ appeal is whether the parties’ Agreement constituted a judgment effective on July 14, 1983. The significance of this inquiry derives from the defendants’ argument that the Agreement was properly vacated in 1985 and should not have been incorporated into the final judgment of the court in 1988. The Bank contends that the Agreement acquired the status of a bindingjudgment when filed in 1983; and that the defendants’ motion to vacate, filed two years later, exceeded the time parameters of Dist./Mun. Cts. R. Civ. P., Rule 60(b)(1) and was thus ineffective to obtain relief from the 1983 judgment. We hold that the parties’ Agreement did not constitute an effective judgment in 1983.
Rule 58(a) expressly renders agreements and all other forms of judgment subject to the provisions of Dist./Mun. Cts. R. Civ. P., Rule 54(b). Rule 54(b) states:
When more than one claim for relief is presented in an action, whether as a claim [or] counterclaim... or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties, (emphasis suppied).
The parties’ Agreement of July 14,1983 failed to dispose of two counts of *26 defendant Georges’ counterclaim and was, therefore, governed by the above underscored provisions of Rule 54(b). No motion for the entry of a separate judgment on the Agreement was filed,[2] and no certification by the trial court was made. See generally, United States Trust Co. of N.Y. v. Herriott, 10 Mass. App. Ct. 313, 321-323 (1980). The parties’Agreement did not, therefore, constitute an effective judgment on July 14, 1983, Bragdon v. Emerson, 19 Mass. App. Ct. 420 (1985); Albano v. City Nat’l Bank of Conn., 11 Mass. App. Ct. 973 (1981), and the defendants’ 1985 efforts to vacate or amend the Agreement were not barred by the time strictures of Dist./Mun.Cts. R.Civ. P., Rule 60(b). Pursuant to Rule 54(b), the parties’Agreement remained subject to revision, upon proper grounds, at anytime before the entry of ajudgment adjudicating all claims, which in this case did not occur until March 11, 1988. Gibbs Ford, Inc. v. United Truck Leasing Corp., 399 Mass. 8, 11-12 (1987); International Fidelity Ins. Co. v. Wilson, 387 Mass. 841, 859-860 (1983). See, e.g., as to agreements for judgment, Bank of Boston v. Haufler, 20 Mass. App. Ct. 668, 675 (1985); E. W. Foster Co. v. McLaughlin, 7 Mass. App. Ct. 865, 866 (1979).
The trial court (Viola, J.) was thus authorized in 1985 to vacate the parties’ July 14, 1983 Agreement and order an assessment of damages.[3] Because the trial j ustice ruled in 1987 that the Agreement in its original form constituted a judgment binding on the court,[4] this case must be returned to the trial court' for an assessment of damages as authorized by the court’s July 23,1985 ruling. Such assessment may be properly restricted to the amount of the Banks’ recovery on Count I of the complaint. At no time during the unduly protracted litigation of this case has Georges advanced any ground which would justify a modification of the parties’ Agreement with respect to Counts II and III of the complaint or Count I of the counterclaim. As the defendants’ original motion to vacate pertained to damages only, the trialjustice may also properly view as foreclosed all questions of the defendants’ liability on the promissory notes held by the Bank.

II. COUNTS HAND III OF THE COUNTERCLAIM

Defendant Georges also challenges on this appeal the trial court’s disposition of his requests for rulings of law. He has failed, however, to submit written *27 argument on the issues raised by requests for rulings numbers 1, 2,3,6 and 7[5] and has thereby waived any right to appellate consideration of the same. Voci v. Sears Roebuck & Co., 1983 Mass. App. Div. 107, 108. “The Appellate Division need not pass upon questions or issues not argued in briefs.” Dist./Mun. Cts. R. Civ. P., Rule 64(f).
Requests numbers 4 and 5 sought a ruling that Georges was entitled as a matter of law to a finding in his favor on that part of Count II of the counterclaim which sought recovery of a real estate broker’s commission. The reported evidence on this question indicates that in 1976, the Bank executed an exclusive real estate broker’s agreement with Georges for the marketing and sale of certain real estate in Foxboro, Massachusetts. On December 8, 1976, Georges procured a Dr. Riaz Hussain as a buyer for the property. Georges, Hussain and the Bank signed a purchase and sale agreement which was expressly made “subject to procurement of [a] variance by the seller for a restaurant, warehouse and/or mercantile business.” At the time of the execution of the purchase and sale agreement, the Foxboro property was zoned partially for limited industrial use and partially for residential use. The agreement provided for the return of Hussain’s $3,000.00 deposit and for a cancellation of the contract in the event the zoning variance was not obtained.
The Bank filed a petition for a variance with the Zoning Board of Foxboro in December, 1976. The Bank subsequently withdrew the petition on the advice of counsel that such a variance was within Foxboro town meeting jurisdiction and could not be legally obtained from the Zoning Board. Two subsequent petitions field by Hussain and by the Bank’s counsel were withdrawn. All three petitions sought variances for restaurant operations on the property. Hussain ultimately demanded and obtained the return of this $3,000.00 deposit from the Bank. The property was eventually sold to another buyer who obtained a permit for the operation of a retail business. This permit was subject to certain restrictions, including the exclusion of any food services on the premises.
The trial court found, inter alia, that:
The failure of the Bank to press for the variance was attributable to its reliance on the opinion of its counsel that the variance could not be legally obtained.... I find the Bank acted in good faith.
[U]nder these circumstances, the conditions in the purchase and sale agreement relative to the procurement of the variance were not fulfilled and Mr. Georges did not produce a buyer ready, willing and able to purchase the premises, and he is not entitled to a commission.
The established rule for the recovery of a real estate broker’s commission in this Commonwealth is that:
a broker earns his commission when' (a) he produces a purchaser ready, willing and able to buy on the terms fixed by the owner, (b)-the purchaser enters into a binding contract with the owner to do so, and (c) the purchaser completes the transaction by closing the title in accordance with provisions of the contract.
Tristam's Landing, Inc. v. Wait, 367 Mass. 622, 629 (1976). The real'estate transaction between the Bank and the buyer produced by Georges wasnever consummated. Georges’claim for a commission under-these circumstances *28 could only be predicated on the exception to the Tristam’s Landing rule which becomes operative when “the failure of completion of the contract results from the wrongful act or interference of the seller.” Id. at 629. The cancellation of the purchase and sale agreement herein resulted, however, from the prospective buyer’s election to terminate pursuant to a zoning contingency clause. The “failure of the completion of the contract” was not caused by any breach or default by the Bank as seller. Compare Leis v. Emerson, 391 Mass. 517, 524-525 (1939); Kinchla v. Welsh, 8 Mass. App. Ct. 367, 371 (1979). Georges has advanced no evidence of action by the Bank amounting to bad faith, misconduct intended to deprive Georges of his commission or any design or “purpose on the part of the [seller] to obtain without payment a profit from the broker’s exertions.” Capezzuto v. John Hancock Mutual Life Ins. Co., 394 Mass. 399, 404 (1985), quoting from Kacavos v. Diamond, 303 Mass. 88, 93 (1939). See also, Kenny v. DiCenso, 10 Mass. App. Ct. 835, 836 (1980); Lipis v. Landano, 7 Mass. App. Ct 894 (1979).
There is no merit in Georges’ contention that the Bank’s failure to undertake more diligent efforts to secure the variance constituted misconduct or contract interference entitling Georges to a broker’s commission. It is arguable that the zoning contingency clause imposed any duty upon the bank, as seller, to employ reasonable efforts to secure a variance, see McCarthy v. Mills, 26 Mass. App. Ct. 223, 230-231 (1988), beyond the good faith obligation implied in all contracts. The variance was a condition precedent to the completion of the realty transaction herein, and such condition was undoubtedly included for the benefit of the prospective buyer, Hussain. Upon the Bank’s failure to obtain the zoning permit, it was Hussain’s right either to cancel the agreement and recover his deposit as liquidated damages, or to waive the condition precedent and purchase the property as then zoned. The Bank enjoyed no right to cancel the agreement to the zoning clause. The mortgage contingency clause cases relied upon by Georges to measure and define the Bank’s obligation to secure a variance are thus inapposite. See, e.g., Sechrest v. Safiol, 383 Mass. 568 (1981); Stabile v. McCarthy, 336 Mass. 399 (1957); Lynch v. Andrew, 20 Mass. App. Ct. 623 (1985). The relevance of the quantum of effort exerted by the buyers to secure financing in those cases derived from the fact that it was the buyer who was endeavoring to invoke the contingency clause to terminate the parties’ transaction.
Georges’ has also failed to demonstrate what, if any, actionable rights a broker may assert upon the failure of a buyer or seller to satisfy a condition precedent to the sale of real estate. Where, as in the instant case, the principal parties to the purchase and sale agreement acquiesce in the cancellation of the contract, or invoke a clause which expressly permits termination, a broker cannot logically claim a wrongful interference with the completion of the transaction entitling him to the recovery of a commission.
Finally, the reported evidence amply supports the trial justice’s finding that the Bank’s failure to secure the variance did not, on the facts of this case, involve or constitute bad faith. Accordingly, we sustain the court’s judgment on Count II of the counterclaim.

III. ORDER.

The trial court’s judgment on Counts II and III of the counterclaim is affirmed. Judgment for the Bank pursuant to the parties’ Agreement for Judgment is vacated. This case is remanded for a limited reconsideration in accordance with this Opinion.

 Although not argued by the parties on this appeal, a further question arises as to whether a separate judgment could have been entered in 1983 on the basis of the Agreement as filed. The Agreement anticipated both a judicial determination of interest rates and a court assessment of attorneys’ fees. See Fall River Housing Joint Tenants Council, Inc. v. Fall River Housing Auth., 15 Mass. App. Ct. 992, 993 (1983).

 Neither party to this appeal has argued the substantive merits, as opposed to the procedural validity, of the court’s decision of July 23, 1985 vacating the Agreement and ordering an assessment of damages. It is essential to note that agreements for judgment which dispose of the entire case serve a salutary purpose; are in the nature of a contract between the parties, Bowers v. Board of Appeals of Marshfield, 16 Mass. App. Ct. 29, 34 (1983); and, when they dispose of the entire case, are not generally set aside in the absence of evidence of fraud, or a lack of consent to the agreement. See, e.g., Fay v. Fay, 359 Mass. 764, 765 (1971); Carver v. Waldman, 21 Mass. App. Ct. 958, 959-960 (1986); Klimas v. Mitrano, 17 Mass. App. Ct. 1004 (1984). An agreement for judgment which authorizes a recovery not permitted by law may be vacated. See New York Trust Co. v. Brewster, 241 Mass. 155, 162 (1922). It is clear that paragraphs 1) and 2) of the parties’ Agreement improperly permitted a duplicate recovery by the Bank of the principal and interest due on one promissorynote. There was thus no error in the allowance of the defendants’ motion to amend paragraphs 1) and 2) of the parties’ agreement.

 There is no suggestion in the record that in 1987 the trialjustice substantively reconsidered and then reversed the court’s 1985 ruling allowing the defendant’s motion to vacate the Agreement for Judgment. See, for discussion of authority to reconsider, Gianelli v. Vatco Industries, Inc., 1986 Mass. App. Div. 10, 12-13 and cases cited. No motion for a reconsideration of the merits of the court’s 1985 ruling was filed by the Bank. It appears instead that the trial court viewed the 1983 filing of the parties’ Agreement as the entry of the final judgment binding on the parties and the court, and considered null and void all.subsequent orders pertaining to counts covered by the Agreement. See Watson v. Falwell, 1983 Mass. App. Div. 326, 328 [agreement not covered by Rule 54(b)].

 Requests 1 and 2 pertain.to attorney’s fee.s agreed to by the parties on Counts II and III of the complaint. Requests 6 and 7 raise issues relevant, respectively, to Georges’ claim for service fees under Count II of the counterclaim and for the value of personal property under Count III of the counterclaim. Request 3 sought a determination that the Bank had failed “to prove with specificity the amounts owed on the notes” and is covered by our review of theparties’Agreementfor Judgment.